Longpré et al., Demandantes y Apelantes, v. Wolff et al., Demandados y Apelados, y Rucabado, Interventor y Apelado.

Apelación procedente de la Corte de Distrito de San Juan, Sección 1ª., en causa sobre cancelación de hipoteca.

No. 1171.—Resuelto en julio 23, 1915.

Deuda—Extinción de la Deuda por Pago—Hecho Probado.—Una vez aceptado como un hecho probado que el demandante satisfizo al demandado la totalidad de la deuda, se impone como consecuencia la conclusión legal de que dicha deuda quedó extinguida por el pago, con arreglo al artículo 1124 del Código Civil.

Id.—Pago Hecho de Buena Fe—Retención de la Deuda—Pago Válido.—El pago hecho de buena fe a la persona en posesión del crédito con anterioridad al embargo del interventor, sin que se hubiera pedido judicialmente la retención de la deuda, es válido.

Id.—Pago de la Deuda—Cancelación de Hipoteca.—Una vez verificado el pago de una deuda en su totalidad, se adquiere por el deudor el derecho a obtener la cancelación de la hipoteca que la garantizaba.

Anotación Preventiva de Embargo—Efectos de la Anotación.—Los efectos de una anotación preventiva de embargo, según el artículo 44 de la Ley Hipotecaria, en armonía con el 1824 del Código Civil, son los de que el acreedor que la obtenga será preferido en cuanto a los bienes anotados, solamente a los que tengan en cuanto al mismo deudor otro crédito contraído con posterioridad a dicha anotación.

Id.—Derecho Real o Hipotecario—Preferencia de Acreedores.—La anotación preventiva de un embargo anotado por providencia judicial y dirigido únicamente a garantir las consecuencias del juicio, no crea ni declara derecho alguno, no altera tampoco la naturaleza de las obligaciones, ni puede convertir en real o hipotecaria la acción que carezca de este carácter, y no produce otros efectos que el de que el acreedor que la obtenga sea preferido en cuanto a los bienes anotados, a los que tengan con el mismo deudor otro crédito contraído con posterioridad a dicha anotación.

Terceros—Títulos Anteriores Inscritos.—Los terceros a que se refieren los artículos 23, 25 y 27 de la Ley Hipotecaria, son únicamente aquellos que sobre las fincas o derechos que son objeto del litigio tienen inscritos con anterioridad sus respectivos títulos.

Documento Privado—Fecha del Documento Privado—Terceros.—La fecha de un documento privado no se contará respecto a terceros sino desde el día en que hubiera sido incorporado o inscrito en un registro público, desde la muerte de cualquiera de los que lo firmaron, o desde el día en que se entregase a un funcionario público por razón de su oficio.

ID.—DOCUMENTO DE PAGO—RECONOCIMIENTO DE AUTENTICIDAD—FALTA DE IM-
PUGNACIÓN—FECHA DE LOS PAGOS.—Quien reconoce la autenticidad de docu-
mentos de pago sin impugnar sus fechas ni invocar razón alguna que los
vicie de nulidad, tiene que aceptar las consecuencias legales de ese recono-
cimiento, quedando impedido por sus propios actos de impugnar su fuerza
probatoria en el extremo relativo a la fecha de los pagos.

ID.—PRUEBA—OTROS ELEMENTOS DE JUICIO—TERCERO.—El artículo 1195 del Có-
digo Civil es de estricta aplicación cuando no hay más prueba de un acto o
contrato que el documento privado, pero ese artículo no se opone a que me-
diante un documento de aquella clase unido a otros elementos de prueba, se
estime probado en perjuicio de tercero, el acto o contrato a que se refiere.
Dicho artículo contiene una presunción de derecho que cede a la prueba en
contrario.

Los hechos están expresados en la opinión.

Abogados de los apelantes: Sres. H. H. Scoville y Enrique
Rincón.

Abogados del interventor: Sres. Alvarez Nava & Domín-
guez.

Los demandados no comparecieron.

EL JUEZ PRESIDENTE SR. HERNÁNDEZ emitió la opinión del
tribunal.

Por escritura pública otorgada en esta ciudad de San Juan
a 18 de agosto de 1909 ante el Notario don Manuel F. Rossy,
Ramón Wolff Aboy y Gustavo Mourraille, éste último por sí
y como administrador de la Central Puerto Real de que era
dueño en unión de su madre Nancy Nerón Longpré y de sus
hermanos Matilde, Amada, Emilia y Víctor Mourraille, ce-
lebraron contrato de compraventa en virtud del cual el pri-
mero, o sea Ramón Wolff Aboy, vendió a los demás una finca
de su propiedad con cabida de 230 con 74 centavos situada
en la Isla de Vieques, por precio de $28,750, de los cuales el
vendedor confesó haber recibido anteriormente la suma de
$8,750, obligándose los compradores a pagar los $20,000 res-
tantes en 30 de junio de 1917, y quedando hipotecada la misma
finca en garantía del pago del precio aplazado.

En la misma escritura se hizo constar que los compradores
respetarían un contrato de arrendamiento de la finca, exis-
tente a favor de la sociedad Díaz & Aboy por un período de
10 cosechas consecutivas a vencer el 30 de junio de 1917,

siendo convenido que el vendedor Ramón Wolff Aboy percibiría el canon del arrendamiento de $112 mensuales en concepto de intereses de los $20,000 de la hipoteca constituída a su favor y que si por cualquier circunstancia el Ramón Wolff Aboy pudiera entregar la finca vendida a sus compradores antes de vencer dicho arrendamiento éstos pagarían los $20,000 de la hipoteca en la siguiente forma: $10,000 a los 6 meses de la entrega e igual cantidad 6 meses después, o sea al año.

En noviembre 9, 1911, los compradores adquirentes de la finca de que se deja hecho mérito presentaron demanda enmendada a la Corte de Distrito de San Juan, Sección 1ª., contra Ramón Wolff Aboy y la sociedad Díaz & Aboy, con súplica de que el Ramón Wolff Aboy fuera condenado a otorgar a los demandantes carta de pago de la hipoteca de $20,000 constituída a su favor por la expresada escritura de 18 de agosto de 1909, y que de no hacerlo así dentro del plazo que señalara la sentencia, procediera el márshal de la corte a hacerlo en nombre de dicho demandado al cual se condenara también a pagar a los demandantes la suma de $1,500 que después de pagado el crédito hipotecario les quedaba adeudando, con intereses, costas y honorarios de abogado, condenándose además a la sociedad demandada Díaz & Aboy a pagar a los demandantes desde la fecha de la sentencia el canon mensual de $112 que por arrendamiento pagan al demandado Wolff.

Además de los hechos consignados en la escritura de 18 de agosto de 1909, tanto con respecto al contrato de compraventa como al de arrendamiento, alegaron los demandantes como fundamento de su acción que con posterioridad a la fecha de dicha escritura habían entregado al demandado Ramón Wolff Aboy a cuenta de los $20,000, varias sumas, hasta el punto de que antes del 15 de junio de 1911 le habían satisfecho la totalidad del crédito con exceso, cuyo exceso asciende aproximadamente a la suma de $1,500 que les adeuda el Ramón Wolff Aboy, sin que éste se haya prestado a otor-

garles la correspondiente carta de pago a pesar de haber sido requerido para ello.

La rebeldía del demandado Ramón Wolff Aboy fué anotada en 25 de abril de 1913, por no haber comparecido a contestar o excepcionar la demanda, no obstante los edictos publicados para su citación, y aunque la sociedad Díaz & Aboy de la que son socios Ramón y Encarnación Aboy y Benítez, y José Agustín Díaz, contestó la demanda en 16 de febrero de 1912, oponiéndose a ella, posteriormente, en 1º. de marzo de 1913, estipularon dicha sociedad y los demandantes que aquélla retiraría su contestación a la demanda enmendada y no presentaría ninguna otra contestación en el pleito, ni de modo alguno pondría obstáculo a la cancelación de la hipoteca solicitada en la demanda.

En 29 de noviembre de 1911 Mateo Rucabado solicitó permiso de la corte para intervenir en el presente pleito asociándose a los demandados, cuyo permiso le fué concedido por orden de 4 de diciembre siguiente, y en la demanda de intervención solicitó se declarara sin lugar la demanda ordenando que los demandantes no recobren nada de los demandados, a cuyo fin alega: (*a*) que ante la misma corte y bajo el No. 4926, sigue una demanda contra Ramón Wolff Aboy en cobro de la suma de $12,000 con sus intereses a razón del 12 por ciento anual a contar desde el 29 de julio de 1911, fecha de la interposición de dicha demanda; (*b*) que esa demanda se funda en que el día 24 de junio de 1911 el demandado Wolff suscribió a favor de Rucabado un pagaré debidamente autenticado ante el notario Frank Antonsanti, por la expresada cantidad de $12,000 a vencer el día 24 de junio de 1916 con intereses al 12 por ciento anual, en cuyo pagaré se constituía como garantía especial de dicha obligación la participación que Wolff poseía en el establecimiento mercantil Wolff's Auto Garage; (*c*) que Wolff, desatendiendo aquella garantía cedió en venta pública con fecha 27 de junio de 1911 ante el notario Sr. Guerra, a Juan Michell, la participación que tenía en el referido establecimiento, y sólo posee como únicos bienes

un crédito hipotecario por $20,000 el cual ha sido embargado por don Ramón Aboy Benítez para garantir una reclamación de $20,000 que tiene entablada y pendiente contra aquel; (*d*) que para aseguramiento de la sentencia que pudiese recaer en el pleito iniciado por Rucabado contra Wolff, la corte de San Juan en auto de 31 de julio de 1911 ordenó sin exigir fianza, el embargo de bienes suficientes del deudor Wolff y el márshal en su virtud embargó el crédito hipotecario por valor de $20,000, inscrito en el Registro de la Propiedad de Humacao a favor de Wolff; (*e*) que el crédito embargado es el mismo cuya cancelación se intenta en el presente pleito; (*f*) que tal embargo fué anotado en el expresado registro con fecha 11 de agosto de 1911; (*g*) que la cancelación pretendida afecta profundamente a los intereses de Rucabado como acreedor auténtico con prelación de embargo sobre el crédito cuya cancelación se pide, desde fecha muy anterior a la presentación de la demanda original en este pleito; (*h*) que niega todos y cada uno de los hechos alegados en la demanda, con excepción de los que se refieren a la constitución e inscripción de la hipoteca por $20,000 a favor de Ramón Wolff Aboy.

Como defensa especial alega Mateo Rucabado que los demandantes no tienen causa de acción contra él ni contra Wolff porque Rucabado es un tercero sin conocimiento civil o material alguno de las transacciones o pagos habidos entre los demandantes y el demandado Wolff, que no constaban en el registro de la propiedad en el momento de inscribir su derecho como acreedor de Wolff.

La demanda de intervención fué excepcionada por los demandantes por el fundamento de no aducir hechos suficientes para determinar una causa de acción, y contestada además con una negación general de todos y cada uno de los hechos alegados en dicha demanda de intervención.

Celebrado el juicio la corte dictó sentencia en 4 de abril de 1914 declarando sin lugar la demanda, sin especial condenación de costas, y contra ella interpusieron los demandantes recurso de apelación para ante esta Corte Suprema.

Además de la prueba testifical ministrada por la parte
actora tendente a comprobar el pago de los $20,000 hecho por
los demandantes al demandado Ramón Wolff Aboy y las pro-
mesas ·de éste de cancelar la hipoteca, consistente dicha
prueba en las declaraciones de los testigos Gustavo Mou-
rraille, Juan Michell y Luis Amedée Bonet, ha venido también
al juicio prueba documental de la misma parte actora, con·
sistente en tres cartas de Ramón Wolff a Gustavo Mourraille
que trascribimos a continuación:

Primera Carta.—Vieques, P. R., abril, 1911.  Sr. G. Mourraille,
Vieques.  Estimado Gustavo: Te suplico me des un giro por $2,000
a cuenta de mi finca que con lo que tengo tomado, $11,221.76 a cuenta
de la hipoteca de $20,000 (veinte mil dollars) que tengo a mi fr.
que hacen un total de $13,221.76, quedando a mi favor por saldo de
toda cuenta $6,778.24.  Tuyo affmo. amigo, (Firmado) R. Wolff.''

"Segunda Carta.—San Juan, P. R., abril 13, 1911.  Sr. don Gus-
tavo Mourraille, Vieques, P. R.  Mi estimado amigo: Tengo este gusto
para adjuntarle el pagaré del banco por $8,000 (ocho mil dollars),
préstamo que pude conseguir Mr. Welty me hiciese.  Recomienda
él que al garantizar Ud. dicho documento lo haga con el sello de la
Central Puerto Real.  También requiere que Ud. con el portador
remita una carta a dicho banco con que le manifieste que Ud. reco-
gerá dicho documento a su vencimiento, esto es, llenar la misma fór-
mula que cuando Ud. me garantizó la pasada vez.  He hecho extender
el documento por la suma de $8,000, pero tan pronto me sea descon-
tado, que será el lunes a primera hora, remitiré a Ud. por correo o
dejaré depositado en dicho banco según Ud. desee, los $2,000 que Ud.
me adelantó y de los cuales me he dado por recibido.  Suyo affmo.
amigo y S. S., (Firmado) R. Wolff.

"Tercera Carta.—Estimado Gustavo: Adjunto le incluyo un
*check* por $1,500, parte devolución de los $2,000 que Ud. me ade-
lantó.  Siendo posible que parte de éstos me hagan falta para efec-
tuar algunas operaciones en New York, yo he descontado $500, que
se los devolveré a mi regreso.  También lo he hecho, o mejor dicho,
me he tomado la libertad, únicamente fundado en que me restan
allá 700 y pico de dollars, si nó no lo hubiera hecho.  Esta la escribo
desde el vapor y por esa circunstancia no soy más extenso.  Su affmo.,
Moncho.''

También fueron aportados como prueba documental dos pagarés a favor del American Colonial Bank, suscritos por Ramón Wolff y garantizados por G. Mourraille como *manager* de la Central Puerto Real, por $10,500 y $8,000 respectivamente, el primero pagado en 1º. de abril de 1911, y el segundo de fecha 13 de los mismos mes y año, así como un cheque contra American Colonial Bank, de G. Mourraille como *manager* de la Central Puerto Real, a favor de Ramón Wolff de 12 de abril de 1911, por la suma de $2,000, habiendo sido satisfechos ambos pagarés por la Central Puerto Real.

La representación del interventor Rucabado admitió la existencia de dichos documentos y que fueron pagados en la fecha que expresan, aunque salvando sus derechos con respecto al interventor.

Dicha representación de Rucabado ha suministrado prueba demostrativa de los siguientes hechos:

1º. Que Ramón Wolff como deudor y E. Vidal como fiador suscribieron en 24 de junio de 1911 un pagaré a favor de Mateo Rucabado o a su orden, por valor recibido de $12,000 a vencer el 24 de junio de 1916 con el interés del 12 por ciento anual, obligando Wolff especialmente al pago de dicha suma la participación que tenía en el establecimiento mercantil que giraba en esta plaza bajo la razón social Wolff's Auto Garage, cuyo pagaré fué autenticado en 28 de junio citado por medio de *affidavit* ante el Notario Frank Antonsanti.

2º. Que por escritura pública de 27 de junio de 1911 Ramón Wolff Aboy vendió su participación en la sociedad Wolff's Auto Garage.

3º. Que en el caso civil No. 4926, de *Mateo Rucabado v. Ramón Wolff* en cobro de dinero, la Corte de Distrito de San Juan, Sección 1ª., dispuso por orden de 31 de julio de 1911 se librara mandamiento al márshal para el embargo de bienes del demandado Wolff en cantidad suficiente a asegurar la suma de $12,000 de principal y $1,000 más en que se calculaban los intereses devengados y por devengar y las costas judiciales, cuyo embargo fué practicado en el crédito hipo-

tecario cuya cancelación se pide y anotado en el Registro de la Propiedad de Humacao con fecha 11 de agosto de 1911.

4°. Que en otro caso civil iniciado ante la Corte de Distrito de Humacao y trasladado luego a la Corte de Distrito de los Estados Unidos para Puerto Rico, caso seguido por Ramón Aboy Benítez contra Ramón Wolff *et al.,* sobre extinción de derecho de propiedad, declaración de otro derecho e indemnización de daños y perjuicios, el juez de la corte de Humacao por orden de 7 de marzo de 1910, ordenó el embargo de bienes al demandado por la suma de $20,000 para pago de daños y $500 más para costas, habiéndose practicado dicho embargo con notificación a los demandados menos Ramón Wolff Aboy, y dádose conocimiento del mismo al Registro de la Propiedad de Humacao en marzo 14, 1910. Es de notar que en el acto del juicio convinieron las partes que el pleito en que se practicó ese embargo había sido desistido desde hacía más de un año.

La corte inferior en su opinión consigna el resultado de la prueba practicada en los siguientes términos:

"La prueba practicada demuestra claramente que el Sr. Mourraille satisfizo al demandado Ramón Wolff Aboy con anterioridad al embargo trabado en el crédito hipotecario inscrito en el registro, por lo menos la cantidad de $19,721.76. El demandado Wolff reconoce en carta fechada en Vieques en 12 de abril de 1911, haber tomado a Gustavo Mourraille la suma de $11,221.76 a cuenta de la hipoteca. En esta carta pide al Sr. Mourraille $2,000, los cuales fueron entregados oportunamente, haciendo un total de $13,221.76. Posteriormente Wolff recibió $8,000 de dicho Sr. Mourraille de los cuales devolvió $1,500, quedando los $6,500 restantes abonados al crédito hipotecario. Esto demuestra claramente, sin dejar lugar a la más mínima duda, que Mourraille abonó a Ramón Wolff $19,721.76 a cuenta de la hipoteca."

No se ha alegado la existencia de fraude alguno con relación a los pagos hechos por Mourraille a Wolff, sobre cuyo particular dice la corte inferior:

"Deseamos hacer constar que en el presente caso no ha habido combinación fraudulenta de ninguna clase. El Sr. Mourraille satis-

fizo a Wolff el importe de la hipoteca ý sus manifestaciones fueron
tan ingenuas y sinceras que dejaron en nuestro ánimo la impresión
que produce siempre una conciencia recta y honrada.''

Como se ve por los párrafos que dejamos transcritos de
la opinión de la corte inferior, el juez incurre en cierta con-
tradicción acerca del pago de la deuda por los demandantes
al demandado Ramón Wolff Aboy, pues primeramente ex-
presa que Mourraille abonó a Wolff por lo menos $19,721.76
a cuenta de la hipoteca y después afirma que Mourraille satis-
fizo a Wolff el importe de la hipoteca.    La segunda afirmación
nos parece más ajustada al resultado de las pruebas, si ade-
más de la prueba documental se tienen en cuenta la declara-
ción de Gustavo Mourraille con explicación detallada de las
diversas partidas de dinero satisfechas a Wolff, y las admi-
siones de que la hipoteca había sido satisfecha, hechas por
Wolff a los testigos Amedée Bonet y Juan Michell.

Aceptando, pues, como hecho probado que los demandan-
tes satisficieron al demandado Ramón Wolff Aboy la totalidad
de la deuda, se impone como consecuencia la conclusión legal
de que dicha deuda quedó extinguida por el pago con arreglo
al artículo 1124 del Código Civil, el cual entre los modos de
extinguirse las obligaciones enumera como principal el pago
o cumplimiento de ellas, estableciendo el artículo 1132 que el
pago hecho de buena fé al que estuviere en posesión del cré-
dito liberará al deudor y el 1133 que no será válido el pago
hecho al acreedor por el deudor después de habérsele orde-
nado judicialmente la retención de la deuda.

En el presente caso el pago fué hecho de buena fé por
Mourraille al demandado Wolff Aboy que estaba en posesión
del crédito, con anterioridad el embargo del interventor sin
que se hubiera ordenado judicialmente a Murraillè la reten-
ción de la deuda, y por tanto el pago fué válidamente hecho
y liberó a los demandantes con relación al demandado Wolff
Aboy.

La conclusión legal antedicha nos lleva a otra, cual es la
de que una vez verificado el pago de la deuda en su totalidad,

se adquirió por el deudor el derecho a obtener la cancelación de la hipoteca, que era accesoria de la obligación principal y de ésta recibía vida

Dicha conclusión era un derecho del deudor que no puede ser estorbado o impedido por el interventor Mateo Rucabado sin más razón que la de haber obtenido anotación preventiva de embargo sobre el crédito hipotecario de Ramón Wolff Aboy, no cancelado en el registro.

Los efectos de una anotación preventiva de embargo según el artículo 44 de la Ley Hipotecaria, en armonía con el 1824 del Código Civil, son los de que el acreedor que la obtenga será preferido en cuanto a los bienes anotados solamente a los que tengan contra el mismo deudor otro crédito contraído con posterioridad a dicha anotación.

Interpretando el artículo 44 de la Ley Hipotecaria al resolver el caso de *Fernández* v. *Márquez y Cía., et al.*, 3 D. P. R., 214, (2ª. Ed.), establecimos la siguiente doctrina:

"Con arreglo a lo dispuesto terminantemente en el artículo 44 de la Ley Hipotecaria, y a, lo declarado con repetición por el Tribunal Supremo de España, entre otras sentencias, en la de 12 de mayo de 1886 y en la de este tribunal del 1 de noviembre de 1902, la anotación preventiva de un embargo, acordada por providencia judicial y dirigida únicamente a garantir las consecuencias del juicio, no crea ni declara derecho alguno, no altera tampoco la naturaleza de las obligaciones, ni puede convertir en real e hipotecaria la acción que carezca de este carácter, y no produce otros efectos que los de que el acreedor que la obtenga sea preferido, en cuanto a los bienes anotados solamente, a los que tengan contra el mismo deudor otro crédito contraído con posteridad a dicha anotación."

Esa misma doctrina fué ratificada en el caso de *Hidalgo* v. *García de la Torre*, 4 D. P. R., 66, (2ª. Ed.).

Los demandantes no persiguen contra Ramón Wolff Aboy el cobro de un crédito contraído con posterioridad al de Mateo Rucabado que motivó la anotación preventiva del embargo de que se trata. No son los demandantes acreedores de Wolff Aboy sino deudores de éste. No se discute en este caso pre-

ferencia de créditos; y por tanto el artículo 44 de la Ley Hipotecaria, lejos de favorecer las pretensiones del interventor está contra ellas al establecer que el que obtenga anotación de embargo a su favor será preferido en cuanto a los bienes anotados solamente a los que tengan contra el mismo deudor otro crédito contraído con posterioridad a la anotación.

La mera anotación del embargo no da derecho a Mateo Rucabado para oponerse con éxito a la cancelación. El reconocimiento de ese derecho equivaldría a reconocerle un derecho real sobre el crédito embargado, cual si ese crédito estuviera hipotecado para garantir el crédito del mismo Rucabado contra Wolff Aboy. Rucabado no se cuidó de que Wolff Aboy le garantizara su crédito con hipoteca sobre el crédito que pudiera tener contra los demandantes, y no cabe en el orden legal que por medio de una anotación de embargo obtenga el mismo resultado que le hubiera dado la constitución de una hipoteca.

Opina el juez inferior que de acuerdo con la jurisprudencia establecida por el Tribunal Supremo de España y por esta misma corte, el interventor Rucabado no ha adquirido ningún derecho real sobre los bienes embargados y tampoco puede considerarse como tercero dentro de las prescripciones de la Ley Hipotecaria, que de acuerdo con el Código Civil únicamente le concede el derecho de preferencia respecto a los bienes anotados y sólo en cuanto a créditos posteriores; pero entiende que en cuanto a las disposicines del Código Civil, Rucabado es un tercero cuyos derechos no pueden discutirse sino en virtud de la prueba que para no dar entrada a la simulación y al fraude exije la ley, y estableciendo como fundamento que los demandantes no han presentado documento público alguno de fecha anterior a la anotación del embargo, sino documentos privados para justificar el pago de la deuda cuya fecha respecto de Rucabado, no puede contarse sino desde el día en que fueron presentados en el juicio, con arreglo al artículo 1195 del Código Civil, llega a la conclusión de que aunque realmente haya sido pagada la deuda, respecto

de Rucabado que es tercero no puede estimarse pagada sino con posterioridad a la anotación del embargo, y por tanto el crédito hipotecario embargado está sujeto a las resultas del juicio de Rucabado contra Ramón Wolff Aboy.

Estamos conformes con la afirmación hecha por el juez inferior de que Rucabado no es tercero dentro de las prescripciones de la Ley Hipotecaria, pues según doctrina de las sentencias del Tribunal Supremo de España de 17 de mayo y 12 de diciembre de 1898 los terceros a que se refieren los artículos 23, 25 y 27 de la Ley Hipotecaria son únicamente aquellos que sobre las fincas o derechos que son objeto del litigio tienen inscritos con anterioridad sus respectivos títulos. *Valdecilla v. Auffant,* 1 D. P. R., 304; *Vidal y Cía.* v. *El Banco Territorial y Agrícola,* 2 D. P. R., 231; *Batista* v. *Taboas et al.,* 15 D. P. R., 409; y *Sociedad Española de Auxilio Mutuo* v. *Rossy,* 17 D. P. R., 83.

Tampoco tenemos inconvenientes en admitir que Rucabado es un tercero con arreglo a los preceptos del Código Civil y que como tercero le es aplicable el artículo 1195 del Código Civil, preceptivo de que la fecha de un documento privado no se contará respecto de terceros sino desde el día en que hubiera sido incorporado o inscrito en un registro público, desde la muerte de cualquiera de los que lo firmaron, o desde el día en que se entregase a un funcionario público por razón de su oficio.

Con arreglo a ese artículo, si Wolff Aboy hubiera extendido a favor de los demandantes uno o varios recibos de entregas parciales de la cantidad adeudada y no hubiera habido más prueba de esas entregas que los tales recibos, y hubiera Rucabado impugnado su fecha, desde luego que Rucabado tendría razón en la defensa de su derecho al amparo de aquel artículo.

Pero es que en el caso presente no se trata de recibos de cantidades satisfechas firmados por Ramón Wolff Aboy sino que en prueba de los pagos de la deuda por los demandantes a Wolff Aboy han venido al juicio cartas suscritas por Wolff

Aboy y documentos de crédito que han tenido ingreso en una institución bancaria extraña tanto a los demandantes como al demandado Wolff Aboy, habiendo además Mourraille explicado las circunstancias de los pagos hechos, y declarado dos testigos sobre admisiones de Wolff Aboy acerca del pago de la deuda y conformidad del mismo en cancelar la hipoteca.

Aún más, el mismo interventor Mateo Rucabado admitió en el acto del juicio la existencia de los dos pagarés y del *check* aducidos como prueba por la parte demandante y también que fueron pagados en la fecha que expresan, aunque salvando sus derechos, según dice, con respecto al interventor. Es decir, que Rucabado ha admitido la certeza y autenticidad de las fechas del pago de los expresados documentos cuyas fechas son anteriores a la de la anotación del embargo, y sólo discute el alcance y validez de tales documentos en cuanto a él, escudado con el artículo 1195 del Código Civil, sosteniendo que esas fechas no son auténticas en perjuicio suyo.

Nos parece que si Rucabado reconoce la autenticidad de dichos documentos sin impugnar su fecha ni invocar razón alguna que los vicie de nulidad, tiene que aceptar las consecuencias legales de ese reconocimiento, quedando impedido por sus propios actos de impugnar su fuerza probatoria en el extremo relativo a la fecha de los pagos.

Opinamos que el artículo 1195 del Código Civil es de estricta aplicación cuando no hay más prueba de un acto o contrato que el documento privado pero ese artículo no se opone a que mediante un documento de aquella clase unido a otros elementos de juicio, se estime probado en perjuicio de tercero el acto o contrato a que se refiere, según sentencia del Tribunal Supremo de España de 18 de febrero de 1898, Jur. Civ., tomo 83, p. 408.

La anterior doctrina ha sido ratificada por el expresado tribunal en sentencia de 16 de abril de 1910 en la que establece ''que si bien no puede negarse al recurrente don Constantino Vega la cualidad de tercero por no haber intervenido en los dos contratos de compraventa en virtud de los cuales

don Vicente Alvarez adquirió de don Ildefonso Alvarez el dominio de las tres fincas rústicas, de donde arranca su derecho a retraer cuatro de igual clase lindantes con aquellas que con otras vendió don Carlos Vega al demandado por escritura pública de 17 de agosto de 1908, no por ello se ha de entender, como sostiene el recurrente, que la fecha legal de los dos primeros contratos extendidos en documento privado no es la consignada en ellos, debiendo contarse la fecha respecto de terceros, a tenor de lo dispuesto en el artículo 1227 del Código Civil (1195 del Código Revisado) desde el día posterior a la escritura pública mencionada en que dichos documentos fueron llevados a la oficina liquidadora del impuesto de derechos reales, porque el artículo citado contiene una presunción de derecho que cede a la prueba en contrario, y la audiencia sentenciadora ha declarado apreciando la de testigos, no impugnable en casasión, que las fechas que constan en aquellos documentos son las en que se celebraron los contratos.''

Jurisprudencia Civil, tomo 117, p. 663.

Tenemos, pues, que según jurisprudencia del Tribunal Supremo de España que aceptamos como buena, el artículo 1227 del Código Civil Español que es el 1195 del nuestro, solo contiene la presunción de que la fecha de un documento privado, a falta de prueba en contrario, es, respecto de terceros, la del día en que ha sido incorporado o inscrito en un registro público o en que murió cualquiera de los que lo firmaron, o en que fué entregado a un funcionario público por razón de su oficio.

Con arreglo a la doctrina expuesta, habiéndose demostrado como se ha demostrado en el juicio por cartas del demandado Wolff Aboy, por documentos de crédito, por prueba testifical del demandante y aun por la del mismo interventor que la deuda de los demandantes a favor del demandado Ramón Wolff Aboy fué satisfecha con anterioridad a la fecha en que se tomó anotación del embargo en el registro de la propiedad, como así lo ha apreciado la corte inferior, surge como conclusión lógica que ese pago produce efectos

legales respecto del interventor Rucabado y que por tanto debe cancelarse la hipoteca que lo garantiza, según solicitan los demandantes.

La doctrina que dejamos establecida no puede calificarse de peligrosa en el sentido de que dentro de ella quepa la posibilidad de que después de embargado un crédito hipotecario el deudor se ponga de acuerdo con el acreedor para simular el pago con anterioridad a la fecha del embargo y destruir los derechos del acreedor a cuyo favor se hizo la anotación, pues si el pago se verificó con anterioridad ha de probarse debidamente, nunca con la sola presentación del documento privado, y si se admitiera la doctrina contraria también podía el acreedor formar una combinación fraudulenta con un tercero para defraudar los derechos del deudor y exigir a éste la repetición del pago de una obligación ya satisfecha.

El mismo juez de la corte inferior aceptó la buena doctrina durante la celebración del juicio, pues cuando la representación del demandante presentó como evidencia documentos privados de pago, se expresó en los siguientes términos: "La Corte manifiesta que entiende que si se le prueba satisfactoriamente que este señor (Gustavo Mourraille) pagó al Sr. Wolff, este pago surte efecto contra cualquier otra persona a menos que se demuestre que ha habido fraude entre este señor y el Sr. Wolff contra los intereses del interventor; ahora, desde luego, un documento privado, es una regla general, que su fecha no se empieza a contar sino cuando se han llenado los requisitos que determina el Código Civil * * *. Entiende la corte que si en las fechas en que se embargó este crédito en el registro de la propiedad había sido satisfecho, el hecho de que no haya sido cancelado ese día no es motivo para que éste haya adquirido algún derecho; adquirió lo que en realidad había; si en aquel día no se debía nada, nada adquirió en virtud del embargo."

Nuestra resolución en el caso de *Córdova et al.* v. *Suris et al.*, 19 D. P. R., 1180 no sostiene la teoría contraria que

luego sostuvo el juez en su opinión, pues ese caso y el presente son enteramente distintos: en aquel se trataba de una tercería de dominio en que sólo presentó la parte demandante para probar su derecho un documento privado otorgado a su favor por el esposo con anterioridad al embargo que motivó la tercería. En el presente caso se trata de la cancelación de una hipoteca con prueba bastante de que la deuda garantizada había sido satisfecha con anterioridad al embargo.

Debiendo, como ya hemos dicho, cancelarse la hipoteca constituída por los demandantes a favor del demandado Ramón Wolff Aboy, por haber sido satisfecho totalmente el crédito cuyo pago garantiza, la sociedad demandada Díaz & Aboy está obligada a pagar en lo sucesivo a los demandantes el canon que por arrendamiento de la finca hipotecada venían satisfaciendo al demandado Wolff Aboy en concepto de intereses de la deuda.

Por las razones expuestas debe revocarse la sentencia apelada y en su lugar dictarse otra por la que, declarando extinguida mediante pago la deuda de $20,000 contraída por los demandantes a favor del demandado Ramón Wolff Aboy en escritura pública de 18 de agosto de 1909, se decrete y ordene la cancelación de la hipoteca que garantiza dicha deuda constituída sobre finca rústica descrita en la mencionada escritura, condenando además a la sociedad demandada Díaz & Aboy a pagar desde la fecha de la sentencia a los demandantes, el canon de $112 mensuales que por arrendamiento de la finca hipotecada venían satisfaciendo al demandado Wolff Aboy en concepto de intereses de la deuda, sin especial condenación de costas.

*Revocada la sentencia apelada.*

Jueces concurrentes: Sres. Asociados Wolff, del Toro, Aldrey y Hutchison.