CÁMARA DE COMERCIANTES MAYORISTAS, peticionaria, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE AGUADILLA, HON. ROBERTO VERAY TORREGROSA, JUEZ, demandado; SUCESORES DE ESMORIS & CO., INC., interventora.

*Número:* O-74-88     *Resuelto:* 15 de octubre de 1974

*Benjamín Rodríguez Ramón, Teodoro Peña García* y *Alfonso L. García Martínez,* abogados de la peticionaria; *Frank Vizcarrondo Vivas,* abogado de la interventora.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

■ A la sindicatura o administración judicial en aseguramiento de efectividad de la sentencia se llega como solución última, exigiéndose demostración previa de que ningún otro remedio provisional tendrá ese efecto. Regla 56.6 de Procedimiento Civil. Reconoce la regla que implicando la sindicatura la interdicción del derecho de propiedad en el área extensa de gobierno y manejo de los bienes, pues quita esa facultad al dueño titular y la transfiere a un comisionado o agente del tribunal, la sindicatura es remedio drástico al que ha de acudirse únicamente en circunstancias extremas. *Freeman* v. *Tribunal Superior,* 92 D.P.R. 1, 29 (1965).

Una vez satisfecho el tribunal de la necesidad de recurrir a la sindicatura para asegurar las reclamaciones de los acreedores, su acción al decretarla ha de tener el propósito de imponer un sistema integral dentro del cual pueda el síndico bajo la dirección del tribunal atender en forma ordenada a los reclamantes que compiten entre sí por cobrar primero como si de una arrancada de purasangres tras la copa del hipismo se tratara. [1]

---

[1] Roca Sastre, *Derecho Hipotecario,* To. 2, pág. 905 Sexta Ed. Barcelona 1968.

██ Para que la administración judicial opere con normalidad y eficiencia es necesario centralizar y encauzar en ella todas las reclamaciones. Permitir que unos acreedores se avengan a la administración y dejar a otros libres para proseguir en acciones independientes la reclamación de sus créditos hasta ejecutar y sacar a subasta los bienes bajo sindicatura, equivale a la destrucción de la fórmula y del sistema ordenado que se propuso al decretar la administración y la suplantación del orden por la anarquía de "sálvese el que pueda", aparte de que desaparecerán o se mermarán en ejecuciones periféricas los bienes cuya administración y eventual disposición por el síndico en pago de acreencias es lo que da contenido y base económica a la sindicatura. He allí la razón por la cual, nombrado un síndico deberán someterse a su autoridad y régimen todas las reclamaciones que afecten los bienes bajo sindicatura, y habrán de cesar los esfuerzos aislados de los acreedores para ejecutar sus créditos por medios propios evadiendo la administración. Clark *On Receivers*, infra, To. 2, sec. 620, Tercera Ed. 1959. Hacia el núcleo central de administración han de dirigirse planteando allí su reclamo, inclusive los de preferencia o prelación de créditos y a ellos deberá atender el administrador en su cabal función de brazo del tribunal, pues la función del síndico se ejerce con universalidad sobre la masa entera de bienes. El síndico ha de regirse por las normas de derecho y equidad; el hecho de que para ser viable y eficaz su encomienda sea necesario despejar el campo de toda acción individual o búsqueda de remedio a través del remate en subasta pública de los bienes afectos a su administración, no le faculta para alterar las reglas de preferencia que distinguen entre clases y rangos de acreencias. Su gestión va encaminada, respetando todo precepto de ley, a lograr el más racional y justo aseguramiento y eventual pago de los créditos, al mismo tiempo que gobierna y administra los bienes con máxima idoneidad que propicie los mejo-

res intereses de los acreedores y del deudor dueño del caudal intervenido. Coinciden las autoridades en este criterio de ocupación del campo por el síndico o administrador judicial con exclusión de acciones y ejecuciones fuera de su ámbito. Clark, *Law and Practice of Receivers*, To. 2, secs. 333, 623, 624, Tercera Ed. 1959; *ibid.* Vol. 1, sec. 276; Wright and Miller, *Federal Practice and Procedure, Civil*, Vol. 12, secs. 2984 y 2985, Ed. 1973.

La corporación Felipe López Lugo, Inc. fue puesta el 13 de mayo de 1971 bajo la administración judicial de un síndico. Como antes expresamos la sindicatura tiene el efecto de fijar o inmovilizar las reclamaciones fuera de su ámbito y somete los bienes a una posesión superior por el síndico a veces llamada *custodia legis* (*Aponte y Sobrino* v. *Sucn. Pérez*, 48 D.P.R. 449, 451 (1935)); y coloca al deudor intervenido en situación de *functus officio.* (*Hernández, Síndico* v. *Ballester*, 49 D.P.R. 869, 871 (1936).)

Tanto la peticionaria Cámara de Comerciantes Mayoristas como la interventora Sucesores de Esmoris & Co. Inc., son acreedores comunes de dicha corporación sujeta a sindicatura, la primera como cesionaria de mayoristas y la otra como tal mayorista que entregaron mercancía a la deudora López Lugo, Inc. Dichas acreedoras siguen rutas distintas para cobrar sus créditos, aunque, según veremos, sin erosión de la sindicatura: la Cámara de Comerciantes comparece ante el síndico, acredita la autenticidad de su reclamación y el síndico le extiende el 13 de junio de 1972 un certificado([2]) que no es otra cosa que un pagaré por $48,747.45 que representa "deuda de la sindicatura", a vencer el 9 de noviembre de 1972. Esmoris, cuyo crédito es de $11,729.31, rehusó un certificado o pagaré como el antes dicho y optó por presentar demanda en cobro de dinero y el 2 de marzo de 1972 obtuvo una orden de

---

([2]) Este certificado de síndico es una figura aclimatada de la Ley de Quiebras (11 U.S.C. 516-2).

embargo preventivo para asegurar la efectividad de la sentencia, anotó el embargo en el Registro de la Propiedad, y el 31 de agosto de 1972 el mismo Tribunal Superior (Aguadilla) donde se han llevado a efecto todos los procedimientos, dictó sentenca concediendo([3]) a Esmoris el principal recla-

([3]) Será la sentencia, y no el embargo, la que determine la preferencia de crédito. Art. 1824 Código Civil, *infra*.

"A) La *finalidad* o *motivación* de la anotación preventiva de embargo es sujetar frente a posteriores adquirentes los bienes anotados a una afección de tipo hipotecario en seguridad de la efectividad de un crédito vencido.

"El cometido de la anotación preventiva de embargo es impedir que el deudor embargado pueda burlar o eludir el embargo con sólo disponer del bien inmueble objeto del mismo, a favor de posteriores adquirentes, frustrando con ello las legítimas esperanzas del acreedor y dejando inoperante el procedimiento de ejecución.

. . . . . . . .

"Evidentemente con este precepto [art. 1927 del Código Civil Español equivalente al 1827 nuestro] para nada había de tenerse en cuenta la *antigüedad del crédito*, sino la del asiento, y esto era inadmisible, porque precisamente en las anotaciones preventivas de embargo la prelación de éstas opera sólo *en perjuicio de los créditos contraídos después de practicada la anotación preventiva de embargo*, es decir de *créditos posteriores en su nacimiento a tal anotación preventiva*, ya que ésta *no altera la naturaleza jurídica del derecho creditual* correspondiente. Por esto la exposición de motivos de la ley Hipotecaria de 1861 expresó que las anotaciones preventivas 'no declaran ningún derecho ni menos convierten en real el que no tenía este carácter', como tampoco 'puede decirse de ellas que son el premio de la carrera, como en otra nación se ha dicho, asimilando el empeño de los acreedores para anticiparse a obtener la anotación, al afán con que se disputa la llegada al término en las carreras de caballos; no son un favor inmerecido que se da al acreedor más exigente; no modifican el carácter de las obligaciones, cambiando las simples en hipotecarias, ni hacen al Juez agente de los litigantes, compeliéndole a que supla la negligencia del acreedor y le otorgue garantías, que tal vez el deudor mismo al tiempo de obligarse no habría constituido . . . ; el derecho del acreedor por la hipoteca judicial no se ha modificado, no ha cambiado de carácter, sólo ha adquirido mayor seguridad desde el punto de vista de quitar al deudor los medios de destruir la cosa, de enajenarla y de constituirse el mismo en insolvencia', de suerte que 'el acreedor que obtiene a su favor una anotación preventiva . . . , sólo gozará de preferencia sobre los que tengan sobre el mismo deudor *otro crédito contraído con posterioridad a la anotación* . . . . El que contrata y no exige hipoteca se contenta con la garantía que le da el crédito personal del deudor, y no debe tener preferencia alguna sobre los que se hallan en el mismo caso. Si el deudor deja de cumplir lo pactado al tiempo convenido, podrá el acreedor compelerlo al pago acudiendo a

mado más $1,000 de honorarios de abogado para un total de $12,729.31. En la vista sobre esta demanda estuvo representado el síndico quien concurrió, se allanó a la demanda, y aprobó los procedimientos, y fue a instancias suyas que al dictar sentencia el 31 de agosto de 1972 dispuso el tribunal que "la demandante no ejecutará dicha sentencia sobre el embargo anotado para asegurar la efectividad de dicha sentencia sobre la propiedad de la demandada por un término de 120 días a partir del día de hoy." (T.A. Tomo 3, pág. 87.)

Ninguna de las acreedoras hizo efectiva su acreencia durante la sindicatura, en aparente espera de que la firma deudora allegara fondos y no hubiese que recurrir a la ejecución y es así como el 22 de mayo de 1973 un grupo de acreedores entre ellos la Cámara de Comerciantes Mayoristas representada por su abogado Peña García transigieron sus reclamaciones contra la corporación López Lugo, Inc.; estipularon plazos y condiciones para el pago de sus respectivas acreencias y acordaron que el síndico cesara en sus funciones el 30 del mismo mes de mayo de 1973 (Minuta, T.A. To. 3, págs. 24–31); y consecuentemente en 20 de junio siguiente el tribunal dictó una orden autorizando a Celso López Peña a recuperar la administración de los bienes de la corporación. (T.A. To. 3, pág. 34.) [4] Como López Peña no cumplió lo acordado la Cámara de Comerciantes obtuvo el 5 de noviembre de 1973 una orden del tribunal disponiendo "la venta judicial de bienes del fundo de la Sucn. Felipe López Lugo, Inc., para que con el producto de la venta se satisfaga la acreencia preferente

---

la vía judicial, pero esta demanda no cambia la naturaleza del crédito ni la fuerza del título.' " Roca Sastre, *Derecho Hipotecario*, Tomo II, págs. 887 y 904–905, Sexta Ed. Barcelona 1968. (Subrayado del autor.)

[4] Las constancias en autos no dejan duda de la terminación de la sindicatura, dato que Esmoris ofrece en un escolio, y que la Cámara en una comparecencia críptica califica como transacción entre unos coherederos, como si no hubiese estado allí representada por el mismo abogado que firma el recurso de *certiorari* y quien el 28 de junio de 1973 suscribió una moción admitiendo la realidad de haber cesado la administración judicial (T.A. Tomo 3, pág. 45).

adeudada a la Cámara de Comerciantes Mayoristas." (T.A., Tomo 3, pág. 64.) Se opone Esmoris invocando la preferencia de su crédito y en su resolución reconociendo prelación al crédito de Esmoris el tribunal destaca como fundamentos: que la sentencia a favor de ésta fue consentida por el síndico, con pleno conocimiento de que previamente se había anotado un embargo(⁵) para asegurar su efectividad y a cuya solicitud se aplazó la ejecución por un término de 120 días; el tribunal nunca autorizó certificados individuales como los expedidos por el síndico a la Cámara y a otros acreedores, sino un solo certificado preferente y negociable por $130,000 para levantar fondos en algún banco con qué pagar las acreencias, gestión que no tuvo éxito, y que el negocio afectado había dejado de operar careciendo de efectivo o crédito para el pago de deudas, por lo que rehusó suspender la subasta promovida por Esmoris en ejecución de su sentencia. Es contra esta resolución que recurre la Cámara a cuya petición suspendimos la subasta fijada para el 12 de marzo de 1974.

Lo cierto es que al atender la reclamación de la recurrente Cámara de Comerciantes, el síndico se limitó a expedir un certificado o comprobante de crédito que nunca hizo efectivo por el medio a su alcance de remate y realización de los bienes de la corporación deudora. La propia recurrente debilitó y redujo las probabilidades de cobrar su acreencia al pactar con otros acreedores la terminación de la sindicatura. Al así actuar estaba renunciando al más eficaz instrumento para asegurar su crédito de clasificación común. Por otro lado el

---

(⁵) La preferencia derivada de la anotación de embargo es relativa, muy por debajo de la mitología que arropa su figura. Roca Sastre, *ob. cit.;* Manresa, *Comentarios a la Ley de Enjuiciamiento Civil*, Tomo 5, págs. 510–511, Ed. Madrid 1956; *Crespo v. Tribunal Superior*, 83 D.P.R. 568, 572 (1961); *Hidalgo v. García de la Torre*, 4 D.P.R. 66–72 (1903); *Longpré v. Wolff*, 23 D.P.R. 15, 24 (1915); *Fernández v. Márquez, & Cía.*, 3 D.P.R. 210, 214 (1903); *Hernández v. Medina*, 19 D.P.R. 88, 91–92 (1913); *Sociedad de Auxilio Mutuo v. Rossy*, 17 D.P.R. 83 (1911); Morell, *Legislación Hipotecaria*, Tomo 3, pág. 94, 2da. Ed.; Art. 1823, N° 5 Código Civil (31 L.P.R.A. sec. 5193 N° 5).

allanamiento del síndico a la demanda interpuesta por Esmoris y la aprobación por el juez que lo nombró de lo allí actuado al dictar la sentencia, convierte la disposición tomada respecto a dicho crédito en acto de la sindicatura.

Disuelta y terminada la sindicatura ha quedado la recurrente Cámara de Comerciantes Mayoristas con un pagaré del síndico y Esmoris con una sentencia final y firme a su favor. A pesar de que el referido pagaré o certificado expresa que el mismo se haría efectivo con preferencia, (6) esta declaración no sustituye los criterios de prelación y clasificación de créditos establecidos por los Arts. 1821 y ss. del Código Civil (31 L.P.R.A. secs. 5191 y ss.) y la sentencia a favor de Esmoris que sólo era un gravamen latente paralizado por la duración de la administración judicial, surge ahora con toda la eficacia y preferencia que le reconoce el Art. 1824(4)(b)—31 L.P.R.A. sec. 5194(4)(b). No habiendo sindicatura que proteger de las incursiones de acreedores individualistas, el camino está expedito para Esmoris ejecutar su sentencia.

*Se anulará el auto expedido y se remitirá el caso al tribunal de instancia para continuación de procedimientos consistentes con esta opinión.*

---

(6) Aun en los casos en que el tribunal emite orden autorizando la expedición de certificados de deuda, la orden no le imparte a éstos un rango de crédito mayor que el de la deuda que representan. Clark, *Receivers,* Vol. 2, Sec. 459, 3a. Ed. 1959.