BUILDING MAINTENANCE SERVICES, INC., demandante y recurrido, *v.* HATO REY EXECUTIVE BUILDING, INC., demandado; BANCO DE ECONOMÍAS, interventor y recurrente.

*Número:* R-78-256     *Resuelto:* 18 de abril de 1980

*Sweeting, Pons, González & Rodríguez* y *Mario L. Paniagua,* abogados del recurrente; *Fernando E. Agrait,* abogado de la recurrida.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

Building Maintenance Services, Inc., demandó a Hato Rey Executive Building, Inc., en cobro de una alegada deuda por concepto de servicios de mantenimiento prestados por la demandante a un edificio propiedad de la demandada, cuyas dependencias estaban rentadas a diferentes inquilinos en virtud de contratos de arrendamiento entre éstos y la demandada. Para asegurar la efectividad de la sentencia que pudiera recaer, la demandante obtuvo un mandamiento de embargo de los cánones, con orden a los inquilinos de consignarlos con el alguacil del tribunal. Al enterarse de dicho embargo, el Banco de Economías presentó demanda de intervención. Alegó tener un derecho preferente sobre los cánones embargados por haberle sido cedidos por la demandada con anterioridad a la presentación de la demanda de Building Maintenance Services, Inc., cuyas cesiones, alegó, se efectuaron mediante documentos auténticos. Building Maintenance se opuso a la intervención por no aparecer que las cesiones se inscribieron en el Registro de Contratos de Refacción Industrial y Comercial, según requerido por la Ley Núm. 8 de 8 de octubre de 1954, 10 L.P.R.A. sec. 581 *et seq.,* conocida como Ley de Cesión de Cuentas por Cobrar. El tribunal así lo entendió y, contra su resolución desestimatoria de la demanda de intervención, el Banco ha recurrido.

Debemos revocar. No habiéndose cedido los cánones en garantía de un crédito y sí en pago de una deuda, ni apareciendo de los autos que la cedente se dedique a actividades comerciales, industriales o profesionales, como lo requiere la citada Ley de Cesión de Cuentas por Cobrar, ésta no aplica. Siendo inaplicable dicha ley y habiéndose cedido

los cánones mediante documentos otorgados ante notario, lo que les da fecha cierta anterior al embargo, las cesiones son oponibles a terceros, en este caso la embargante, conforme a las prescripciones del Código Civil sobre la cesión de crédito.

I

La Ley de Cesión de Cuentas por Cobrar, 10 L.P.R.A. sec. 581 *et seq.*, no tiene un precedente específico en legislaciones similares. Se adoptó luego de un estudio de las leyes de esta naturaleza vigentes en veintidós estados de los Estados Unidos, teniéndose en cuenta instituciones vigentes en Puerto Rico muy particulares a nuestro sistema de Derecho Civil, como lo es el Derecho Registral. Véase *Diario de Sesiones*, Vol. IV, T. 1, pág. 443 y siguientes. [1] Ésta, y la Ley de Contratos de Refacción Industrial y Comercial, Ley Núm. 86 de 24 de junio de 1954, 10 L.P.R.A. sec. 551 *et seq.*, por virtud de la cual se creó el registro de contratos de refacción industrial y comercial "a cargo de los actuales registradores de la propiedad en sus respectivos distritos" (Sec. 4 de dicha ley, 10 L.P.R.A. sec. 554), se aprobaron como parte de un propósito legislativo común a ambos estatutos. Perseguían fomentar la expansión industrial y comercial en Puerto Rico atrayendo la inversión de capital extranjero, particularmente norteamericano. La adopción de leyes como éstas, que no les eran extrañas a los inversionistas potenciales en sus propios estados de la Unión donde ya existían leyes sobre *assignment of accounts receivable* y leyes sobre *factoring*, [2] les harían mejor inteligibles instituciones de crédito

---

[1] El estudio fue encomendado al perito Alphonse A. Laporte, cuyo informe se reseña parcialmente en el artículo de José J. Rivera Inchausty, *Comentario a la Ley de Cesión de Cuentas por Cobrar*, 25 Rev. Jur. U.P.R. 144 *et seq.* (1955-56).

[2] Nótese que en ambas leyes se establece cuál es el texto en inglés de cada una. En la Ley de Contratos de Refacción Industrial y Comercial se va más lejos, y se dispone que en caso de conflicto entre los textos español e inglés prevalecerá el texto inglés. Sec. 14 de dicha Ley, 10 L.P.R.A. sec. 551. El término "refacción" usado en dicha Ley es la traducción que el legislador hizo del inglés *factor* o *factoring*.

que de otra manera no eran impermisibles en nuestro sistema vigente de Derecho Civil. (³)

Durante el siglo XIX era prácticamente desconocido el uso de los derechos incorporales como fuente de riqueza. El desarrollo del crédito como base de la economía moderna ha permitido que se tenga consciencia de que las cuentas por cobrar constituyen créditos tan exigibles en dinero efectivo como un pagaré o cualquier otro instrumento negociable, y pueden por tanto servir de base para fomentar el comercio y la industria mediante su cesión como garantía. (⁴) Las dificultades que la cesión de cuentas por cobrar presentaba desde el punto de vista de su garantía al acreedor cesionario, que no recibe algo tangible que oponer al deudor de lo cedido—a diferencia de la hipoteca, la prenda, el pagaré, etc.—quedaron salvadas mediante la adopción de estas leyes y, en el caso de Puerto Rico, la creación de un registro donde la cesión se inscribe para la mayor protección al cesionario frente a terceros.

España tomó, como medida frente al mismo problema de desarrollo del crédito, la adopción en 16 de diciembre de 1954 de la figura jurídica de la prenda sin desplazamiento de posesión. Dice al efecto el profesor Rodrigo Uría en su obra *Derecho Mercantil*, 10ma ed., Madrid, 1975, págs. 670–671:

"Es una institución impuesta por el moderno desarrollo del crédito, cuya característica esencial reside en que se constituye la prenda dejando las cosas sobre que recae en posesión de su dueño. El preámbulo de la ley de 16 de diciembre de 1954 que la regula (arts. 1 al 11 y 52 al 66) justifica a la nueva institución destacando los graves inconvenientes que provienen de que el deudor pierda la posesión de

---

(³) Valga señalar que las leyes estatales sobre estos medios de financiamiento han sido sustituidas por el Art. 9 del *Uniform Code of Commerce* en todos los estados de la Unión norteamericana, con la excepción de Luisiana. Véanse *Uniform Code of Commerce*, Art. 9; Comentario a la Sec. 9-101 del mismo; y Coogan, *Article 9 of the Uniform Commercial Code; Priorities Among Secured Creditors and the Floating Lien*, 72 Harv. L. Rev. 838, 842 (1959); *Article 9—An Agenda for the Next Decade*, 87 Yale L.J. 1012 (1978).

(⁴) Véase, *The Civil Code and Modern Methods of Financing*, por el profesor Max Nathan, Jr., 50 Tul. L. Rev. 582, 588–590 (1975–76).

la prenda, sobre todo cuando se trata de cosas muebles de gran valor destinadas a fines agrícolas e industriales, afirmando que el desplazamiento de la posesión no sólo es perjudicial para el deudor, sino también, en gran medida, para la economía nacional al paralizar elementos de trabajo y de producción y fuentes de riqueza y para el propio acreedor, al disminuir la capacidad económica del deudor y sus posibilidades de hacer frente de un modo normal a sus obligaciones."

La Ley de Cesión de Cuentas por Cobrar define los conceptos "cuenta" y "cesión" de la manera siguiente:

"Sección 1.—Salvo que el contexto o la materia demanden otra significación, los siguientes términos tendrán, a los efectos de este Capítulo, el significado a continuación de cada uno de ellos expresado:

El término 'cuenta' significa cuenta por cobrar. Incluye el derecho a recibir sumas vencidas o por vencer sobre cuentas abiertas o por contratos. El término excluye las sumas vencidas o los derechos representados por sentencias, pagarés, letras de cambio, giros, aceptaciones u otros instrumentos o convenios negociables o no negociables para pago de dinero cuya transferencia comúnmente se verifica mediante endoso y entrega del instrumento o contrato, también excluye (1) las sumas vencidas bajo, y los derechos representados por, una hipoteca de bienes muebles, un contrato de venta condicional u otro instrumento mediante los cuales se reserva el dominio sobre la propiedad o se sujeta ésta a un gravamen; (2) las sumas vencidas o por vencer, por concepto de servicios de un empleado; (3) los fondos provenientes de contratos públicos o privados de construcción o de suministro en relación con los cuales el cedente ha prestado fianza para garantizar el cumplimiento del contrato o el pago de las reclamaciones por trabajo o por materiales que surjan del mismo. El referido término también excluye cualquier cuenta (según ésta se define anteriormente) perteneciente a una persona que no se dedique al comercio, a la industria o a una profesión.

'Cesión' incluye cualquier transferencia, prenda o hipoteca de una cuenta o de parte de la misma, por una persona dedicada al comercio, a la industria o a una profesión. . . ." 10 L.P.R.A. sec. 581.

La Sec. 3 de dicha Ley requiere la inscripción de toda cesión de cuentas por cobrar, disponiendo lo siguiente:

"(1) Cualquier persona que se disponga a aceptar o haya aceptado o esté considerando aceptar una o más cesiones de cuentas por cobrar puede presentar para su inscripción en el registro de contratos de refacción industrial y comercial creado en las secs. 551 a 560 de este título, una declaración suscrita por el cedente y por el cesionario de tal o tales cuentas por cobrar conteniendo: (a) una designación del cedente y del cesionario, y del sitio principal de negocio de cada uno de ellos en Puerto Rico, si lo tuviere; y (b) una declaración de que el cedente ha cedido o se propone ceder al cesionario una o más cuentas por cobrar.

. . . . . . . .

(2) La presentación para inscripción de la declaración prescrita por el inciso (1) de esta sección y el pago de los correspondientes derechos de inscripción constituirán la inscripción bajo este Capítulo a favor del cesionario, con respecto a todas las cuentas por cobrar cedidas por el cedente al cesionario que sean cedidas dentro de los cinco años siguientes a la fecha de la presentación de la declaración para su inscripción, y tal término de cinco años será el período de efectividad de tal declaración a menos que en la misma se fije un término más corto.

Las cesiones de cuentas que se realicen después de la fecha de vigencia de esta ley no serán efectivas contra acreedores y compradores de buena fe que no tengan conocimiento de las mismas hasta que la declaración prescrita por el inciso (1) de esta sección (o la declaración de renovación o declaración jurada de continuación dispuestas en este Capítulo), haya sido presentada para inscripción de acuerdo con las disposiciones del mismo.

. . . . . . . .

(6) Cualquier documento cuya presentación para inscripción se autoriza en este Capítulo tendrá eficacia de documento registrado desde el momento en que se presente al correspondiente registrador de la propiedad junto con los honorarios prescritos para su inscripción, y desde ese momento constituirá notificación del contenido de dicho documento y de los efectos de su inscripción bajo los términos de este Capítulo." 10 L.P.R.A. sec. 583.

■ Surge claramente del debate que se suscitó en el Senado mientras se consideraba el proyecto sustitutivo del P. del S. 100, que se convirtió en la Ley Núm. 8 de 8 de octubre de 1954, es decir, la Ley de Cesión de Cuentas por Cobrar, que su propósito fue proveer un medio por el cual un manu-

facturero o comerciante pudiera obtener financiamiento de instituciones de crédito a través de la cesión de sus cuentas por cobrar. De tal forma, el acreedor de una cuenta, que fuese comerciante o industrial, podía tomar dinero a préstamo a cambio de dicha cuenta *como garantía*. [5]

La inscripción de la cesión tiene como propósito evitar el fraude, pues ofrece publicidad a los acreedores del cedente en cuanto a cuáles cuentas por cobrar "que aparecen en los libros de contabilidad del manufacturero o comerciante están afectadas por el gravamen que resulta de su cesión a una institución de crédito". [6]

La cesión contemplada por esta ley es una en concepto de garantía y no de pago. Véase 25 Rev. Jur. U.P.R. 140, 148, 150, *Comentario a la Ley de Cesión de Cuentas por Cobrar*, citado en el escolio 1, *supra*. Como hemos visto, la cesión que en este caso hizo la demandada cedente al Banco Economías lo fue en pago de una deuda contraída por la primera con el segundo, y no para garantizar un préstamo a hacerse por el Banco.

Las transcritas disposiciones de la sección primera de la Ley Núm. 8 que consideramos son claras al excluir de sus disposiciones la cesión de cuentas hecha por una persona que no se dedique al comercio, a la industria o a una profesión. Siendo el propósito de la ley, según indicado, fomentar el desarrollo industrial y comercial, no hay razón para aplicarla a transacciones que nada tienen que ver con industria o comercio. Nada hay en los autos ante nos que indique que Hato Rey Executive Building, Inc., que es la cedente en este caso, se dedicara a la industria o al comercio, o que hiciera la cesión de los cánones de arrendamiento como parte o en interés de una transacción industrial o mercantil. El hecho de que dicha corporación, como cualquier persona jurídica o natural, obtuviera financiamiento de un banco para construir

---

[5] *Diario de Sesiones*, Vol. IV, T. 1, pág. 426 (1954).

[6] *Diario de Sesiones*, Vol. IV, T. 1, pág. 425 (1954); Vol. V., pág. 377 (1954).

un edificio a ser dedicado a la producción de rentas no la convirtió en industrial o comerciante. No se dedica a la industria de la construcción todo aquel que construye un edificio. Tampoco es comerciante quien invierte para producir y vivir de rentas. El Código de Comercio define el término comerciante así:

"Son comerciantes, para los efectos de este Código:

(1) Los que, teniendo capacidad legal para ejercer el comercio, se dedican a él habitualmente, en nombre propio;

(2) Las compañías, corporaciones y asociaciones mercantiles o industriales, que se constituyeren con arreglo a este Código o a leyes especiales, y las corporaciones y compañías que se hayan organizado en el extranjero, también para fines mercantiles e industriales, y que estén debidamente autorizadas para hacer negocios en Puerto Rico." Código de Comercio, Art. 1, 10 L.P.R.A. sec. 1001.

■ El tratadista Joaquín Garrigues señala que comerciante es la persona que ejerce la función intermediaria entre la producción y el consumo, cuya mediación ha de tener carácter lucrativo. Dice:

"La finalidad de lucro se da en otra serie de actividades que no son mercantiles. El propietario que compra una finca para revenderla o para arrendarla, o el que compra ganado para volverlo a vender; el escritor que vende sus obras; el artista que abre una exposición; el médico que establece una clínica, y otros muchos que podrían citarse, se proponen obtener una ganancia, y sin embargo, no son comerciantes. El espíritu de lucro se une a la interposición en el cambio (de mercancías, de dinero o de servicios) para integrar la figura del comerciante. La interposición tiene por finalidad el lucro, y el lucro, a su vez, es efecto de la interposición. Los comerciantes forman una cadena entre los productores y los consumidores. Operan en el espacio trayendo las mercancías del lugar de la producción al del consumo para venderlas allí; operan en el tiempo anticipando las adquisiciones a la reventa de las mercancías o revendiendo éstas antes de adquirirlas, según las previsiones de una futura alza o baja de los precios; operan en la forma cuando dan a las mercancías la contextura exterior o tan sólo medidas y proporciones diversas para responder a las heterogéneas necesidades de los consumidores. El gran fenómeno económico complejo en el que se obtiene la mejor satisfacción de las necesidades

humanas, interponiéndose entre productores y consumidores con el intento de lucrarse en este [*sic*] interposición, es precisamente el comercio." Garrigues, *Tratado de Derecho Mercantil*, 1947, T. I, Vol. I, págs. 321–322. (⁷)

██ Habiéndose cedido los cánones de arrendamiento en este caso en pago de una deuda, y no habiéndose establecido que la corporación cedente hiciera la cesión como industrial, comerciante o profesional, es innecesario considerar si la Ley de Cesión de Cuentas por Cobrar aplica a cánones de arrendamiento. (⁸)

## II

Dispone la Sec. 7 de la Ley Núm. 8 que nos ocupa:

"Esta ley no se interpretará en el sentido de que sustituye o deroga cualesquiera otras leyes vigentes relativas a las mismas

---

(⁷) Véase la cita de Goldschmidt en torno al carácter distintivo de la mediación en la especulación mercantil, en la citada obra de Garrigues, págs. 346–347:

"... Goldschmidt dice que el propósito de lucro llamado especulación es esencial al comercio, pero no es exclusivo de éste. Así, el propietario agrícola que rotura un campo yermo, especula; el que toma en arrendamiento una finca rústica, especula; y también el propietario que la arrienda, ya que espera obtener un beneficio más elevado que si la cultivase él mismo; quien compra ganado para fertilizar con el abono un campo y explota los pastos de su finca, especula también; el escritor, el artista, el profesor, el médico, el empleado y cualquiera que hace objeto de lucro el ejercicio de su actividad espiritual, especula también. Quien ejerce el comercio, especula, mas no es la especulación en sí, sino el género de ella la que distingue el comercio de las demás actividades lucrativas; la especulación mercantil se realiza por la mediación."

(⁸) Sobre este particular la ley no es clara. Al definir "cuenta" en su sección primera, antes transcrita, excluye de la definición "(1) las sumas vencidas bajo y los derechos representados por una hipoteca de bienes muebles, un contrato de venta condicional u otro instrumento *mediante los cuales se reserva el dominio sobre la propiedad* o se sujeta ésta a un gravamen". (Énfasis nuestro.) ¿A qué propiedad se refiere? Sabemos que en el arrendamiento lo que se transmite es la posesión de la cosa arrendada, mas no su propiedad. Y cuando se ceden los cánones de arrendamiento, ni siquiera la posesión de la cosa arrendada se transmite. Los cánones son los frutos de la propiedad, y eso es lo que se cede. Leemos, además, que al definir el término "cuenta" la ley se refiere (Sec. 1 transcrita) al "derecho de recibir sumas vencidas o por vencer sobre *cuentas abiertas* o por contratos". (Énfasis nuestro.) Ya señalamos, al considerar el historial legislativo de esta ley, que al hacerse referencia a "cuentas por cobrar" en el debate del Sust. P. del S. 100, se hizo referencia a aquellas "que aparecen en los libros de contabilidad del manufacturero o comerciante". Véase el escolio 5 *supra*.

materias que ella comprende, sino que se entenderá e interpretará como acumulativa con relación a aquéllas." Leyes de Puerto Rico, 1954, págs. 109–111, 10 L.P.R.A. sec. 587.

■ Ello significa que en aquellos casos de cesiones de créditos no cubiertos específicamente por dicha ley, aplicarán las disposiciones del Código Civil. Es menester, por tanto, determinar si las cesiones de los cánones de arrendamiento héchasle al Banco de Economías son oponibles a la demandante Building Maintenance Services, Inc., cuya calidad de tercero no está controvertida. Surge de los autos ante nos que las cesiones fueron hechas y reconocidas ante notario, mediante afidávit, varios meses antes de que se instara la demanda y el consiguiente embargo de dichos cánones.

El Art. 1416 del Código Civil dispone:

"La cesión de un crédito, derecho o acción no surtirá efecto contra tercero sino desde que su fecha deba tenerse por cierta en conformidad a las secs. 3273 y 3282 de este título.

Si se refiere a un inmueble, desde la fecha de su inscripción en el registro." 31 L.P.R.A. sec. 3941.

Las Secs. 3273 y 3282 a que se refiere el texto transcrito corresponden a los Arts. 1172 y 1181 del Código, respectivamente, y disponen:

"Art. 1172.—Los documentos públicos hacen prueba, aun contra tercero, del hecho que motiva su otorgamiento y de la fecha de éste.

También harán prueba contra los contratantes y sus causahabientes, en cuanto a las declaraciones que en ellos hubiesen hecho los primeros."

"Art. 1181.—La fecha de un documento privado no se contará respecto de terceros, sino desde el día en que hubiese sido incorporado o inscrito en un registro público, desde la muerte de cualquiera de los que los firmaron, o desde el día en que se entregase a un funcionario público por razón de su oficio.

La misma disposición se aplicará respecto al mandante, con relación a los contratos efectuados por mandatarios, en los casos a que se refieren y salvo las excepciones que consignan las secs. 3453 y 4487 de este título, en sus últimos respectivos párrafos."

■ Se desprende de estos preceptos que lo esencial para que la cesión de un crédito surta efecto contra tercero es que

tenga fecha cierta. Puede constar tal certeza si la cesión se hace mediante documento público o mediante documento privado cuya fecha esté debidamente autenticada o pueda ser cumplidamente establecida.

▆▆▆ No es menester que aquí decidamos sobre la naturaleza del afidávit como documento público o privado. (⁹) Baste señalar que un afidávit es un documento auténtico, *Ramos Mimoso* v. *Tribunal Superior*, 93 D.P.R. 551, 554 (1966); *Bonilla* v. *Santiago*, 30 D.P.R. 246, 248 (1922), que hace fe pública. *Ramos Mimoso*, supra.

La Ley de 12 de marzo de 1908, 4 L.P.R.A. secs. 887 a 895, regula lo concerniente a los afidávit o "declaraciones de autenticidad", como así los denomina. Define el afidávit en su sección primera, 4 L.P.R.A. sec. 887, de la siguiente manera:

"Llámase afidávit o declaración de autenticidad el acto y el documento, mediante los cuales, un notario u otro de los funcionarios designados en las secs. 887 a 895 de este título certifica o da fe de la verdad o reconocimiento de una firma, de un juramento, o de otro hecho o contrato que afectare a propiedad mueble o inmueble, no formalizados en escritura pública."

La sección 5 de la citada Ley, 4 L.P.R.A. sec. 891, crea el "registro de afidávit" y dispone lo concerniente a la manera de llevarlo. Dice:

"Los notarios llevarán un registro de afidávits o declaraciones de autenticidad, en notas concisas fechadas, numeradas, selladas y suscritas por los mismos notarios, haciendo constar el nombre de los otorgantes y la naturaleza del acto autenticado.

Estos afidávits o declaraciones de autenticidad serán incluidos en los índices dispuestos por la sec. 836 de este título.

El registro de afidávits o declaraciones de autenticidad, cuando comprenda doscientos folios, será encuadernado en la misma forma que los protocolos de instrumentos públicos."

---

(⁹) En *Pietri* v. *Registrador*, 22 D.P.R. 729, 732 (1915), señaló este Tribunal, citando a *Delgado* v. *Registrador*, 22 D.P.R. 125, y *Hernández* v. *Rosado*, 22 D.P.R. 387, que "un *affidávit* no es un documento público de la clase exigida por la Ley hipotecaria". Véase, por otra parte, Muñoz Morales, *Apuntes de Derecho Notarial*, 10 Rev. Jur. U.P.R. 95, 195 (1940-41).

■ Por su propia naturaleza, los "registros de afidávit", como los protocolos notariales, son registros públicos.

■ La cesión de un crédito hecha en escritura pública tiene fecha cierta y es oponible a tercero porque la escritura pública es un documento público. Arts. 1416 y 1172 del Código Civil antes transcritos. Dicha escritura forma parte del protocolo del notario autorizante, al que ningún tercero tiene acceso. La razón de su oponibilidad a tercero es la certeza de su fecha. De la misma manera, la cesión que se hace mediante documento privado, una vez se autentica por afidávit ante notario, tiene fecha desde entonces, tan cierta como la de la escritura pública, pues además de la fe notarial, queda constancia de ella en el registro de afidávit o declaraciones de autenticidad que la ley requiere al notario llevar.

■ El propósito del Art. 1416 del Código Civil, equivalente al 1526 del español, no es dar publicidad a la cesión del crédito para que surta efecto contra tercero, sino dar certeza a la fecha de la cesión, para evitar fraudes y simulaciones. Véanse Puig Brutau, *Fundamentos de Derecho Civil*, 1956, T. II, Vol. II, pág. 234; Scaevola, *Código Civil*, 2da ed., 1970, T. XXIII, Vol. 2, pág. 627; Castán, *Derecho Civil Español, Común y Foral*, 11ma ed., 1974, T. 3, págs. 306–307; sentencia del Tribunal Supremo de España de 6 de febrero de 1923, que señala que el Art. 1526 (1416 nuestro) persigue "evitar que la anticipación intencionada de la fecha de un documento privado perjudique a quien en él no hubiese intervenido, exigiendo al efecto la autenticación de la misma".

■ Para concluir, cabe señalar que el Art. 1181 del Código Civil, 31 L.P.R.A. sec. 3882, antes transcrito, no excluye otros medios de prueba para establecer, en perjuicio de tercero, el acto o contrato a que se refiere el documento privado. *Segarra* v. *Vda. de Lloréns*, 101 D.P.R. 731, 734 (1973), y autoridades y casos allí citados. Dijimos en *Longpré* v. *Wolff*, 23 D.P.R. 15, 28 (1915), que citamos con aprobación en *Segarra*, supra, que dicho artículo "solo contiene la presunción de que la fecha de un documento privado, a falta

de prueba en contrario, es, respecto de terceros, la del día en que ha sido incorporado o inscrito en un registro público o en que murió cualquiera de los que lo firmaron o en que fue entregado a un funcionario público por razón de su oficio". La recurrida en el caso ante nos no ha impugnado que la cesión de los cánones de arrendamiento al Banco recurrente se hiciese antes de la fecha en que obtuvo su embargo. Ello robustece la presunción de fecha cierta que el reconocimiento ante notario dio a la cesión.

*Por las consideraciones que anteceden, y habiendo comparecido la parte recurrida mediante fundamentada oposición a la expedición del auto de revisión solicitado, atendida la regla 50 de nuestro Reglamento, se dictará sentencia en que se expida el auto y se revoque la dictada por el tribunal de instancia.*

El Juez Asociado Señor Díaz Cruz concurre con opinión. El Juez Presidente Señor Trías Monge y el Juez Asociado Señor Martín no intervinieron.

—O—

Opinión concurrente del Juez Asociado Señor Díaz Cruz.

San Juan, Puerto Rico, a 18 de abril de 1980

Sólo concurro en el resultado final de la opinión de excluir los contratos de cesión de rentas de las disposiciones de la Ley de Cesión de Cuentas por Cobrar, 10 L.P.R.A. sec. 581 y ss. La cesión de cánones de arrendamiento, que en nuestro mundo comercial está arraigada como una de las más apreciadas garantías en el tráfico general, tiene una connotación y naturaleza distinguible de las llamadas "cuentas por cobrar". El reconocido propósito de la citada Ley Núm. 8 de 8 octubre, 1954 fue abrir nuevas fuentes de crédito, y no modificar ni suprimir las ya existentes.

No puedo aceptar la conclusión a que se llega en la opinión de que Hato Rey Executive Building, Inc., que trafica en el mercado de alquileres, no sea un comerciante. Su empresa es

típicamente comercial, con el elemento de dedicación habitual configurado en el Art. 1(1) del Código de Comercio. 10 L.P.R.A. sec. 1.001(1). El alquiler de locales por canon estipulado es negocio lucrativo así calificado en *Daubón Belaval* v. *Secretario de Hacienda*, 106 D.P.R. 400, 413 (1977).

Considero que la referida Ley Núm. 8 de 1954 suficientemente excluye la cesión de cánones en su Art. 1(1) como instrumento mediante el cual [el deudor] se reserva el dominio sobre la propiedad. No hay necesidad de buscar solución fuera del propio texto de la ley.