# 2003 DTA 145

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL V DE PONCE Y AIBONITO**

PEDRO PEREZ ORTIZ, DORIS MARTINEZ MARTIN, Y LA SOCIEDAD LEGAL DE GANANCIALES CONSTITUIDA ENTRE AMBOS
Peticionarios

v.

RAFAEL LLULL SAN MIGUEL, MARGARITA VERA MONROIG, Y LA SOCIEDAD LEGAL DE GANANCILES CONSTITUIDA ENTRE AMBOS
Recurridos

Núm. KLCE-03-00361

San Juan, Puerto Rico, a 12 de septiembre de 2003

Panel integrado por su Presidente, el Juez Brau Ramírez,
el Juez Aponte Hernández y la Juez Pabón Charneco

Brau Ramírez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

### I

Los esposos peticionarios Pedro Pérez Ortiz y Doris Martínez Martín y los esposos recurridos Rafael Llull San Miguel y Margarita Vera Monroig son todos residentes de Ponce.

Para la fecha de la presente controversia, los recurridos operaban y eran dueños de una compañía de embotellamiento y distribución de agua situado en el Barrio Cucharas de Ponce. La compañía se llamaba *"Agua Cristal Las Garzas"* y embotellaba agua bajo dicho nombre comercial. Los recurridos operaban dicho negocio a través de las corporaciones R. & F.J. Llull, Inc. (*"F.J. Llull"*) y C.M. Silver Spring, Inc. (*"Silver Spring"*).

Mediante una serie de contratos otorgados entre septiembre de 1995 y abril de 1996, los peticionarios adquirieron de la parte recurrida, varias propiedades asociadas al negocio de embotellamiento de aguas, así como una franquicia para el suplido de agua de manantial bajo el nombre *"Agua Cristal Las Garzas."*

El 25 de septiembre de 1995, las partes otorgaron un contrato privado de compra de franquicia, ante el Lcdo. Juan Medina Torres, mediante el cual los peticionarios adquirieron todos los derechos para el procesamiento, venta y distribución de Agua Cristal Las Garzas por el término de cuarenta años, a cambio de un pago de una cantidad por botella de agua vendida. Los recurridos se comprometieron a suplir agua de manantial a los peticionarios para ser procesada, embotellada y vendida como agua *"Cristal Las Garzas."*

Los recurridos se comprometieron a no competir con los peticionarios, a no vender ni mercadear a granel *"Agua Cristal Las Garzas"* a los clientes de los peticionarios, a no vender agua embotellada bajo ninguna otra marca en el sur de Puerto Rico por ocho años, a no conceder etiqueta privada en violación a los derechos de los peticionarios, sin el consentimiento de éstos y a no suplir ni vender agua en la región sur de Puerto Rico por ocho años.

El 5 de diciembre de 1995, mediante una segunda escritura privada otorgada ante el Lcdo. Medina, las partes otorgaron un contrato de opción de compra para la venta de la planta embotelladora de agua de los recurridos a los peticionarios por la cantidad de $1,250,00.00.

El solar fue posteriormente adquirido por los peticionarios, de la corporación F.J. Llull, mediante la escritura núm. 78 otorgada en Ponce el 2 de abril de 1996, ante el notario Manuel Frau Pietri. Los peticionarios pagaron $815,00.00 del precio de venta, quedando a adeudar un balance de $435,000.00.

Al día siguiente, 3 de abril de 1996, las partes otorgaron una escritura privada ante el Lcdo. Frau, aclarando que la transacción concluida el día anterior incluia la cesión de todo derecho, acción, participación y/o interés de los recurridos en la corporación F.J. Llull.

El 30 de abril de 1996, mediante escritura privada otorgada ante el Lcdo. Juan Medina, las partes reconocieron la existencia de una deuda adicional de $600,000.00 de los peticionarios hacia los recurridos, como producto de las transacciones mencionadas. Los peticionarios se comprometieron a saldar esta deuda en un término de cinco años, comenzando un año después del 30 de abril de 1996.

Tomando en consideración esta suma, la cuantía total envuelta en la transacción entre las partes era de $1,850,000.00. Supuestamente, los peticionarios se comprometieron a otorgar hipotecas sobre varios inmuebles de su propiedad para garantizar el balance adeudado. No está claro si los peticionarios llegaron a realizar lo anterior.

Los peticionarios hicieron un pago inicial a los recurridos, pero, para diciembre de 1997, dejaron de pagar su deuda.

En su lugar, en 1998, los peticionarios instaron la presente acción por incumplimiento de contrato. En su demanda, los peticionarios alegaron que, durante las negociaciones entre las partes, Silver Spring deliberadamente le había suministrado información incorrecta sobre el negocio, principalmente sobre el estado de situación e ingresos y gastos del negocio, para inducir a los peticionarios a adquirir el mismo. Los peticionarios también alegaron que los recurridos se habían comprometido a no competir con el negocio de los peticionarios, lo que habían incumplido.

Los peticionarios solicitaron la resolución del negocio, la devolución de sus prestaciones y la compensación por los daños ocasionados, valorados por ellos en $500,000.

Los recurridos contestaron la demanda, negando las alegaciones. Presentaron, además, una reconvención contra los peticionarios, argumentando que el incumplimiento de los peticionarios con su parte del negocio les había ocasionado daños, que los recurridos valoraron en $3,163,418.60.

Luego de otros incidentes, el 3 de febrero de 2000, los recurridos presentaron una moción solicitando desestimación de la demanda y de protección.

En su moción, los recurridos señalaron que los peticionarios habían dejado de pagar su deuda con los recurridos desde diciembre de 1997, la que, según los recurridos, ascendía a $911,943.75, además del principal de $435,000.00 que se adeudaba por la venta del inmueble. Los recurridos alegaron que los peticionarios habían dejado de pagar estas sumas, a pesar de que las ventas anuales de la planta embotelladora habían aumentado, por lo que la demanda de los peticionarios debía de ser desestimada.

Los recurridos se quejaron de que, en su demanda, los peticionarios habían realizado una exposición acomodaticia de los hechos, ocultando su propio incumplimiento con su obligación de pagar por el negocio que habían adquirido. Los recurridos acompañaron con su moción una carta que el peticionario Pedro Pérez Ortiz les había enviado en diciembre de 1997, en la que expresaba que los peticionarios habían desistido de su intención de explotar el negocio y expresando su disposición de vender el mismo de vuelta a los recurridos por el mismo precio de $1,250,000.00 original. ██ En su carta, el peticionario expresaba que:

*"El negocio está actualmente en muy buenas condiciones. El perfil y calidad de los clientes es bueno, la organización interna corre eficientemente y hemos hecho mejoras de capital que redundan en beneficio para el negocio. Ej.: camión, mejoras estructurales, vagones, almacenaje, área de almacenaje. Estas realidades no las*

*hemos incluido en el precio aunque son de valor positivo para la operación. No se han incluido porque es nuestro interés y deseo vender el negocio a ustedes lo más pronto dentro de lo posible. Queremos dedicarnos a nuestras otras inversiones a las cuales nos venimos dedicando hace muchos años."*

Los recurridos alegaron que los peticionarios estaban impedidos de instar la demanda, en vista de su propio incumplimiento contractual (*exceptio non rite adimpleti contractus*).

Los recurridos solicitaron, además, al Tribunal que se emitiera una orden protectora para que, ya bien se les pagara el balance adeudado de $911,943.75; se le fijara una fianza a los peticionarios para responder por la obligación contraída, o se ordenara la entrega inmediata del negocio a los recurridos.

Los peticionarios se opusieron a la moción de los recurridos, insistiendo en que éstos habían incumplido sus obligaciones bajo el contrato, al violar su compromiso de no competir con los peticionarios. Los peticionarios también insistieron en que los recurridos habían actuado dolosamente en el perfeccionamiento del negocio, al suministrar información incorrecta a los peticionarios sobre el negocio.

Luego de otros trámites, el Tribunal celebró una vista para la discusión de la moción de los recurridos el 1ro de mayo de 2000. Luego de escuchar la argumentación de las partes, el Tribunal denegó la moción de desestimación de la demanda. El Tribunal, sin embargo, acogió la solicitud de los recurridos para que se emitieran medidas provisionales para garantizar el pago de la obligación contraída por los peticionarios. El Tribunal requirió a las partes la presentación de un informe de situación de la compañía preparado por un contador público autorizado, lo que fue posteriormente sometido por las partes.

El 8 de marzo de 2001, el Tribunal emitió una resolución, en la cual requirió a la parte peticionaria a consignar la suma de $5,000.00 mensuales a partir del mes de marzo de 2001. El Tribunal también requirió a los peticionarios a prestar una fianza de $900,000.00 para garantizar el pago de la obligación.

El 5 de abril de 2001, a solicitud de la parte peticionaria, el Tribunal enmendó su resolución a los efectos de ordenar que la consignación de los pagos ordenados fuese realizada en el Tribunal. El Tribunal apercibió a los peticionarios que *"[e]l incumplimiento de esta orden conllevará severas sanciones y desacato al Tribunal."*

Los peticionarios no cuestionaron, de primera intención, la orden del Tribunal sobre la consignación de los pagos mensuales de $5,000.00. Los peticionarios comenzaron a realizar dicho pagos.

Mediante moción presentada el 5 de abril de 2001, sin embargo, los peticionarios solicitaron que se redujera el monto de la fianza fijada, alegando que parte de la deuda ya estaba garantizada con hipoteca. Posteriormente, los peticionarios solicitaron al Tribunal que los eximiera de prestar fianza alguna. Este asunto fue objeto de varias discusiones ante el Tribunal y las partes entre agosto de 2001 y enero de 2002. Durante esta fecha, los peticionarios se mantuvieron depositando los pagos mensuales ordenados por el Tribunal.

El 15 de febrero de 2002, el Tribunal emitió una resolución en la que resolvió dejar sin efecto su orden requiriendo a los peticionarios la prestación de una fianza. Se dispuso en dicha ocasión que los peticionarios venían obligados a continuar haciendo las consignaciones de acuerdo con lo ordenado por el Tribunal. Se autorizó a los recurridos a retirar las sumas consignadas.

El 26 de febrero de 2002, los recurridos solicitaron el retiro de los fondos consignados. El 5 de marzo de 2002, los peticionarios se opusieron al retiro de los fondos. Poco después, el 14 de marzo de 2002, los peticionarios solicitaron al Tribunal que se les relevara de continuar depositando los pagos mensuales ordenados.

Según alegan los peticionarios, en mayo de 2002, los recurridos dejaron de venderles agua.

El 18 de junio de 2002, el Tribunal de Primera Instancia rechazó las mociones presentadas por los peticionarios y autorizó el retiro de las sumas consignadas. Los peticionarios no recurrieron de dicho dictamen.

Posteriormente, los peticionarios descontinuaron la consignación de los pagos mensuales ordenados por el Tribunal. Según los peticionarios, esto se debió al cierre de las operaciones de la planta *"Agua Cristal Las Garzas"*, lo que, a su vez, fue provocado por la decisión de los recurridos de dejar de suplir agua a los peticionarios.

Así las cosas, el 15 de agosto de 2002, los recurridos presentaron una moción al Tribunal solicitando que se encontrara incursa en desacato a la parte peticionaria y se le impusieran sanciones por su incumplimiento. El Tribunal procedió a señalar una vista, la que tuvo lugar el 16 de enero de 2003.

Para esa fecha, la parte peticionaria había dejado de consignar sus pagos desde hacía ya varios meses. Durante la vista, los peticionarios intentaron presentar testigos para establecer que los recurridos habían incumplido sus propias obligaciones contractuales, pero la declaración de éstos sobre estos particulares fue excluida por el Tribunal, el que estimó que dicha materia resultaba impertinente.

A la conclusión de la vista, el Tribunal declaró con lugar la moción de los recurridos y ordenó a los peticionarios poner al día sus pagos en el plazo perentorio de 30 días, so pena de la imposición de desacato civil y la imposición de sanciones adicionales. El Tribunal impuso a los peticionarios una sanción de $500.00 por concepto de honorarios de abogado, por el incidente.

Insatisfechos, los peticionarios acudieron ante este Tribunal.

Mediante resolución emitida el 3 de abril de 2003, concedimos término a la parte recurrida para exponer su posición en torno al recurso.

La parte recurrida compareció oportunamente.

Posteriormente, los peticionarios solicitaron que se les permitiera presentar una transcripción de los procedimientos de la vista celebrada el 16 de enero de 2003, lo que fue autorizado por el Tribunal. La transcripción fue presentada el 25 de agosto de 2003.

Procedemos a resolver.

## II

En su recurso, los peticionarios plantean que el Tribunal de Primera Instancia erró al exigirles realizar una consignación mensual de $5,000.00, como condición para litigar el caso.

Los peticionarios, según hemos visto, no cuestionaron la orden del Tribunal requiriéndoles consignar las sumas en cuestión, la que fue emitida el 8 de marzo de 2001, más de dos años antes de la presentación del recurso de los peticionarios.

Conforme al Art. 4.002 de la Ley de la Judicatura de Puerto Rico de 1994, el recurso de *certiorari* de los peticionarios debía ser formalizado *"dentro de los treinta días siguientes a la fecha de notificación de la resolución u orden."* 4 L.P.R.A. sec. 22k.

Se trata, según ha aclarado el Tribunal Supremo de Puerto Rico, de un término de estricto cumplimiento, que no puede ser prorrogado, *"excepto cuando mediaren circunstancias especiales debidamente sustentadas en la petición de certiorari."* 4 L.P.R.A. sec. 22k (Supl. 2001); véase, *Zayas v. Royal Insurance Co. of P.R.,* 146 D.

P.R. 694, 700 (1998); *Bco. Popular de P.R. v. Mun. de Aguadilla,* 144 D.P.R. 651, 657 (1997); véase, además, Hiram Sánchez Martínez, *Derecho Procesal Apelativo,* Lexis-Nexis de Puerto Rico, Inc., 2001, a las págs. 421-422.

El planteamiento de la parte peticionaria resulta ser, de este modo, tardío.

En cualquier caso, aun si gozáramos de discreción para considerar los argumentos de los peticionarios sobre este particular, no estaríamos inclinados a intervenir con esta porción de las actuaciones del Tribunal de Primera Instancia.

La Regla 56.1 de las de Procedimiento Civil, según se conoce, confiere autoridad a los tribunales de Primera Instancia para, en cualquier momento y a instancias de la parte reclamante, dictar *"cualquier orden provisional que sea necesaria para asegurar la efectividad de la sentencia."* 32 L.P.R.A. Ap. III, R. 56.1.

Los remedios provisionales así autorizados incluyen el embargo de bienes, la prohibición de enajenar, la sindicatura, órdenes para hacer o desistir de hacer actos específicos, así cualquier otra medida que el tribunal estime apropiada, según las circunstancias del caso. *Id.;* véanse, *Ramos de Szendrey v. Colón Figueroa,* 153 D.P.R. ___ (2001), **2001 J.T.S. 33**, a la pág. 957; *Vargas Cobián v. González Rodríguez,* 149 D.P.R. ___ (2000), **2000 J.T.S. 10**, a la pág. 481; *Pérez Mercado v. Martínez Rondón,* 130 D.P.R. 134, 142-148 (1992); *Silva Oliveras v. Durán Rodríguez,* 119 D.P.R. 254, 262 (1987); *Rocafort v. Alvarez,* 112 D.P.R. 563, 570-571 (1982); *Albaladejo v. Vilella Suau,* 106 D.P.R. 331, 335 (1977); *Cámara Comer. Mayoristas v. Trib. Superior,* 102 D.P:R. 646, 647 (1974).

Se trata, en esencia, de órdenes para auxiliar y hacer efectiva la jurisdicción del Tribunal sobre la controversia. El Tribunal de Primera Instancia goza de amplia discreción para emitir este tipo de órdenes, sujeto a que la medida adoptada sea razonable. *Vda. de Galindo v. Cano,* 108 D.P.R. 277, 282 n. 5 (1979); *F.D. Rich Co. v. Tribunal Superior,* 99 D.P.R. 158, 176 (1970).

La Regla 56.2 de las de Procedimiento Civil establece que, de ordinario, no se concederá, modificará, anulará o se tomará providencia alguna sobre un remedio provisional sin notificar a la parte adversa y sin celebrar una vista, 32 L.P.R.A. Ap. III, R. 56.2; *Rivera Rodríguez & Co. v. Lee Stowell, etc.,* 133 D.P.R. 881, 896 (1993), véase, además, *Connecticut v. Doehr,* 501 U.S. 1, 9-13 (1991). ■■

La Regla 56.3, por su parte, establece que al emitir una orden sobre remedio provisional, el Tribunal fijará una fianza suficiente para responder por todos los daños y perjuicios que puedan ser ocasionados como consecuencia del aseguramiento. 32 L.P.R.A. Ap. III, R. 56.3; *Pereira v. Reyes de Sims,* 126 D.P.R. 220, 226-227 (1990); *Soc. de Gananciales v. Rodríguez,* 116 D.P.R. 468, 471-472 (1985); *Blatt & Udell v. Core Cell,* 110 D.P.R. 142, 146 (1980); *Vda. de Galindo v. Cano,* 108 D.P.R. a la pág. 282; *Rodríguez v. Fidelity Bond. Mort. Corp.,* 108 D.P.R. a la pág. 158; *Alum Torres v. Campos del Toro,* 89 D.P.R. 305, 322 (1963).

Este requisito puede ser dispensado cuando surge de un documento público o fehaciente que la obligación es exigible, se trata de un litigante insolvente o cuando se gestiona el remedio luego de emitida una sentencia final. *Ramos de Szendrey v. Colón Figueroa,* **2001 J.T.S. 33**, a la pág. 957; *Feliciano Figueroa v. Toste Piñero,* 134 D.P.R. 909, 912-913 (1993); *M. Quilinchini Sucrs., Inc. v. Villa Investment Corp.,* 112 D.P.R. 322, 326 (1982); véanse, además, *Reyes v. Oriental Fed. Savs. Bank,* 133 D.P.R. 15, 20-21 (1993); *Bucaré Management v. Arriaga García,* 125 D.P.R. 153, 157-159 (1990).

La Regla 56.3 también dispone que cuando se hubiese emitido una orden de remedio provisional, el demandado podrá retener la posesión de cualesquiera bienes afectados *"prestando una fianza por tal suma que el tribunal estime suficiente para responder por el valor de dicha propiedad."* Véase, *Soc. de Gananciales v.*

*Rodríguez*, 116 D.P.R. a la pág. 473; *Vda. De Galindo v. Cano,* 108 D.P.R. a la pág. 283.

En la situación de autos, según hemos visto, los peticionarios gozan de la posesión de diversos bienes adquiridos de los recurridos, los cuales los peticionarios no han pagado en su totalidad. A pesar de haber incumplido su obligación de pago, los peticionarios instaron la presente acción sobre incumplimiento de contrato contra los recurridos. Ante esta situación, y estando los peticionarios en posesión de los bienes objeto del negocio, los recurridos solicitaron la desestimación de la demanda, señalando razonablemente que, habiendo incumplido su parte de los acuerdos, los peticionarios estaban impedidos de reclamar por el incumplimiento de los recurridos. Véase, *Irizarry López v. García Cámara,* 155 D.P.R. ___ (2001), **2001 J.T.S. 164**, a la pág. 457; *Martínez v. Colón Franco, Concepción*, 125 D.P.R. 15, 33 (1989); *Mora Dev. Corp. v. Sandín,* 118 D.P.R. 733, 743 (1987); véase, además, 31 L.P.R.A. sec. 3017.

El Tribunal de Primera Instancia, sin embargo, optó por no desestimar la demanda, sino que proveyó un remedio provisional a los recurridos, requiriendo a los peticionarios que continuaran pagando su obligación pendiente la adjudicación del litigio.

No pensamos que el Tribunal hubiera abusado de su discreción al así actuar. El remedio provisional concedido, a nuestro juicio, cae dentro de la amplia discreción concedida al Tribunal de Primera Instancia por la citada Regla 56.1 de las de Procedimiento Civil.

Es evidente que la obligación convenida por los peticionarios está documentada en varias escrituras, incluyendo una escritura pública. Ante esta situación, el Tribunal pudo haber ordenado el embargo de las propiedades en cuestión y pudo haber privado a los peticionarios de la posesión del negocio que estaban administrando. Eligió, en su lugar, ordenar a los peticionarios continuar pagando lo que adeudaban, pendiente la adjudicación de las controversias entre las partes, para permitir la continuidad de las operaciones de la planta.

El procedimiento seguido brindó una oportunidad razonable a la parte peticionaria de ser escuchada y de conocer los fundamentos para la orden del Tribunal. Véase, *Rivera Rodríguez & Co. v. Lee Stowell, etc.,* 133 D. P.R. a las págs. 899-900*; Domínguez Talavera v. Tribunal Superior,* 102 D.P.R. 423, 426-427 (1974).

Los peticionarios, según hemos indicado, no cuestionaron el dictamen en cuestión ni se opusieron al mismo, hasta que los recurridos comparecieron al Tribunal quejándose de que los peticionarios habían incumplido la orden en cuestión. En estas circunstancias, no vemos base alguna para intervenir con la orden del Tribunal, en esta etapa.

Los peticionarios también alegan que el Tribunal de Primera Instancia erró al emitir dicho remedio provisional, luego de que la solicitud de los recurridos hubiera sido considerada y rechazada por otro magistrado. Hemos examinado los documentos sometidos por las partes. De los mismos no se desprende que la solicitud de orden protectora presentada por los recurridos hubiese sido inicialmente rechazada por el Tribunal. Al contrario, dicha solicitud fue acogida por foro de Primera Instancia, solicitándose un informe de un contador para confirmar la cuantía de los pagos a ser requeridos.

En cualquier caso, tratándose de un dictamen de naturaleza interlocutoria, el mismo podía ser reconsiderado por otro magistrado. Véase, *Torres Cruz v. Municipio de San Juan*, 103 D.P.R. 217, 219 (1975); véase, además, la Regla 43.5 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 43.5.

Los peticionarios se quejan de que el Tribunal hubiera ordenado la entrega a los recurridos de los dineros consignados. Este planteamiento también es tardío. La orden en cuestión fue dictada por el Tribunal de Primera Instancia el 18 de junio de 2002 y no fue cuestionada de manera oportuna por los peticionarios.

La entrega de dichos fondos, por otro lado, resulta consistente con la estructura del remedio provisional diseñado por el Tribunal en este caso. ■

Los peticionarios se quejan de que el Tribunal de Primera Instancia declarara con lugar la solicitud de sanciones presentada por los recurridos y que les conminara a depositar todas las sumas adeudadas, bajo apercibimiento de desacato, imponiendo a los peticionarios una sanción de $500.00. Los peticionarios se quejan, en particular, de que el Tribunal no les permitiera presentar evidencia testifical de que su incumplimiento con la orden del Tribunal fue atribuible a las actuaciones de los recurridos que afectaron la viabilidad del negocio de embotellamiento de agua.

Es evidente que, tratándose de una obligación privada de pago de dinero, la orden del Tribunal requiriendo a los peticionarios poner al día las sumas adeudadas no puede ser puesta en vigor por la vía de apremio, sino solamente mediante alguna otra sanción procesal, tal como la expedición de una orden de embargo o mandamiento de ejecución contra la propiedad de los peticionarios. Véanse, *Pabón Rodríguez y Díaz López, ex parte*, 132 D.P.R. 898, 901-902 (1993); *Srio. D.A.C.O. v. Comunidad San José, Inc.,* 130 D.P.R. 782, 809-812 (1992); *Viajes Lesana, Inc. v. Saavedra,* 115 D.P.R. 703, 710 (1984); véase, además, el Art. II, Sección 11 de la Constitución del E.L.A.

En la situación de autos, hemos examinado la transcripción de los procedimientos llevados a cabo por la distinguida Sala del Tribunal de Primera Instancia durante la vista del día 12 de enero de 2003 y somos de la opinión que el foro recurrido efectivamente erró al no permitir a los peticionarios presentar la prueba solicitada para tratar de justificar su incumplimiento con la orden del Tribunal. Los testigos en cuestión fueron ofrecidos por la parte peticionaria para tratar de establecer que el incumplimiento por los recurridos de sus propias obligaciones bajo el contrato no había permitido a los peticionarios seguir operando la planta. Este es un elemento importante para evaluar si la actitud de los peticionarios ha sido contumaz. Compárese, *Rodríguez Avilés v. Rodríguez Beruff,* 117 D.P.R. 616, 628-629 (1986).

Según hemos indicado, el Tribunal Supremo de Puerto Rico ha aclarado que es importante, que en la implementación de este tipo de órdenes, se brinde a las partes afectadas una oportunidad razonable de ser escuchadas y de conocer los fundamentos para la orden del Tribunal. Véase, *Rivera Rodríguez & Co. v. Lee Stowell, etc.,* 133 D.P.R. a las págs. 899-900.

En el presente caso, creemos que el Tribunal de Primera Instancia debe brindar a los peticionarios una oportunidad más completa de justificar su incumplimiento.

Por los fundamentos expresados, se expide el auto solicitado, a los sólos efectos de dejar sin efecto la resolución emitida en corte abierta por el Tribunal de Primera el 16 de enero de 2003, que impuso a los peticionarios una condena de $500.00 por concepto de honorarios de abogado y les concedió un término perentorio para poner al día los pagos adeudados, bajo apercibimiento de desacato civil. Se deniega el auto en cuanto a los demás planteamientos levantados por los peticionarios.

Se devolverá el asunto al Tribunal de Primera Instancia para procedimientos consistentes con esta sentencia.

Lo pronunció el Tribunal y lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

1. En su moción, los recurridos señalaron que dicha suma no incluia los otros $600,000.00 que los peticionarios se habían obligado separadamente a pagar.

2. El Tribunal Supremo de Puerto Rico ha reconocido que, por excepción, es permisible que un tribunal emita una orden de embargo sin notificación a la parte adversa y sin vista previa, cuando: (1) el reclamante ha alegado o demostrado tener un previo interés propietario sobre la cosa embargada; (2) cuando se han alegado y demostrado la existencia de circunstancias extraordinarias; y (3) cuando se ha alegado y demostrado la probabilidad de prevalecer mediante prueba documental fehaciente de la cual se desprenda que la deuda es una líquida, vencida y exigible. *Ramos de Szendrey v. Colón Figueroa*, **2001 J.T.S. 33**, a la pág. 957; *Rivera Rodríguez & Co. v. Lee Stowell, etc.,* 133 D.P.R. a las págs. 899-900.

3. Los peticionarios plantean que el Tribunal de Primera Instancia erró al exigirles la prestación de una fianza. Este señalamiento es tardío, por cuanto el Tribunal de Primera Instancia dejó sin efecto su orden sobre este particular. No estimamos, sin embargo, que, en las circunstancias particulares de este caso, el foro recurrido hubiese abusado de su discreción al estimar que debía exigirse a los peticionarios que garantizasen el pago de la deuda existente.