# 2006 DTA 42

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**REGIÓN JUDICIAL DE BAYAMÓN**
**PANEL VII**

EZEQUIEL NIEVES ORTIZ, SU ESPOSA ZAIDA IRIS DÁVILA HERNÁNDEZ
Demandantes-Recurridos

v.

ANAUDI HERNÁNDEZ PÉREZ, SU ESPOSA VERÓNICA N. PONCE PEÑA, Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES POR ELLOS COMPUESTA H/N/C EVOLUTION WIRELESS Y/O E-WIRELESS ACCESORIES CORP.
Demandados-Recurrentes

LUIS A. GONZÁLEZ CAMACHO, MARÍA FIOL FUMERO
Interventores-Recurridos

Núm. KLCE-05-00539

San Juan, Puerto Rico, a 31 de enero de 2006

Panel integrado por su Presidente, el Juez Martínez Torres, el Juez Brau Ramírez y la Juez Fraticelli Torres

Brau Ramírez, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCIÓN

### I

La parte peticionaria, los esposos Anaudi Hernández Pérez y Verónica Ponce Peñas y la corporación Evolution Wireless Corp. ("*Evolution*") recurren de una orden emitida el 29 de marzo de 2005 por el Tribunal de Primera Instancia, Sala Superior de Bayamón, en el procedimiento sobre *injunction*, incumplimiento de contrato y daños y perjuicios instado contra los peticionarios por los esposos recurridos Ezequiel Nieves Ortiz y Zaida Dávila Hernández.

Mediante el dictamen en cuestión, el Tribunal de Primera Instancia declaró con lugar una solicitud de embargo preventivo presentada por los recurridos para asegurar el cobro de su reclamación contra los peticionarios.

Mediante resolución emitida el 11 de mayo de 2005, acogimos el recurso, concedimos término a los peticionarios para presentar una transcripción de la prueba presentada durante la vista de embargo y ordenamos a los recurridos presentar su posición, una vez se hubiese presentado dicha transcripción.

Los peticionarios presentaron la reproducción requerida de la prueba. Los recurridos, por su parte, han comparecido en oposición al recurso.

Denegamos.

### II

Según se desprende del recurso, los peticionarios son comerciantes y residentes en Aguadilla.

Para 2003, los recurridos mantenían un negocio en los centros comerciales de Puerto Rico de venta de teléfonos celulares y accesorios para estos equipos, incluyendo contratos de activación de los teléfonos, tarjetas pre-pagadas y otros productos similares. Los recurridos tenían acuerdos de distribución con la compañía de comunicaciones Verizon Wireless ("*Verizon*").

Los recurridos mantenían kioskos en los pasillos de 15 centros comerciales a través de la Isla, desde los cuales llevaban a cabo sus actividades. Las 15 localidades eran: Aguadilla Mall, Mayagüez Mall, Plaza del Oeste (San Germán), Yauco Plaza, Plaza del Caribe (Ponce), Plaza Guayama, Plaza Cayey, Plaza Palma Real (Humacao), Plaza Carolina, San Patricio Plaza (Guaynabo), Plaza Río Hondo (Bayamón), Plaza del Sol (Bayamón), Centro Gran Caribe Mall (Vega Alta), Plaza del Norte (Hatillo) y Plaza Isabela.

Los peticionarios habían suscrito contratos de arrendamiento separados con cada uno de los centros comerciales, para la ubicación de sus kioskos.

Los peticionarios conducían su negocio a través de dos corporaciones, CDW Accesories Corporation ("*CDW*") y Ewireless Accesories Corporation ("*Ewireless Accesories*"). Los contratos de arrendamiento aparecían a nombre de Ewireless Accesories, la cual también tenía bajo su nombre el contrato de distribución con Verizon y otros contratos relacionados.

Para principios de 2003, los peticionarios entraron en conversaciones con los recurridos para la venta de su negocio.

Los recurridos son residentes en Trujillo Alto. El recurrido Ezequiel Nieves había sido, hasta poco tiempo antes de los hechos, empleado de Verizon. El recurrido se había retirado y, junto con su esposa, había formado una sociedad con el Dr. Luis A. González Camacho y con Maria Fiol Fumero, para dedicarse a los negocios. El Dr. González Camacho es residente en San Juan. La Sra. Fiol es residente en Humacao.

La sociedad mencionada operaba a través de la corporación Ewireless Stores Corp. ("*Ewireless Stores*"). La recurrida Zaida Dávila Hernández, además, era accionista en la corporación de los peticionarios Ewireless Accesories.

Luego de otros trámites, el 5 de marzo de 2003, las partes otorgaron un contrato de promesa de compraventa de activos corporativos, acciones corporativas y otros asuntos, mediante el cual Ewireless Accesories se comprometió a vender sus acciones y activos a favor de Ewireless Stores por la suma de $750,000. Ewireless Accesories compareció a dicho acuerdo representada por su presidente, el peticionario Anaudi Hernánez Pérez, mientras que Ewireless Stores fue representada por la recurrida Zaida Dávila Hernández.

Ese mismo día, 5 de marzo de 2003, representados por las mismas partes, Ewireless Accesories y Ewireless Stores también otorgaron un documento privado de distribución y venta de accesorios, mediante el cual se acordó que la corporación de los recurridos se hiciera cargo del negocio en los puestos de los peticionarios. El acuerdo mencionaba específicamente que Ewireless Stores había adquirido los 15 puestos, "*mediante la compra de las acciones de capital comunes de CDW*". Los recurridos se comprometieron a continuar la operación de dichos negocios y a actuar como distribuidores para Verizon, exclusivamente.

Al día siguiente, 6 de marzo de 2003, las partes otorgaron el contrato de compraventa de acciones mencionado, mediante el cual Ewireless Stores adquirió la totalidad de las acciones de CDW, por el precio de $750,000. CDW compareció representada por el peticionario Anaudi Hernández Pérez, presidente de la corporación, mientras que Ewireless Stores fue representada por la recurrida Zaida Dávila Hernández.

Los recurridos plantean que los peticionarios le representaron que CDW era la dueña de los puestos, por lo que, mediante el negocio en cuestión, los recurridos adquirieron la totalidad del negocio de los peticionarios, incluyendo todo su inventario y los contratos de arrendamiento existentes. Los recurridos obtuvieron un préstamo del Banco Popular para pagar el precio de venta requerido por los peticionarios.

Aunque la parte vendedora lo era CDW, el precio de venta fue pagado directamente al peticionario y cobrado por éste. Dicho dinero se depositó en certificados de depósito a nombre de la recurrida Evolution.

Como parte del acuerdo de adquisición, los peticionarios supuestamente se comprometieron con los recurridos a notificar a los centros comerciales sobre la transacción y a tramitar la actualización de los contratos de arrendamiento, a fines de que éstos estuvieran a nombre del nuevo dueño del negocio, Ewireless Stores.

Según hemos indicado, sin embargo, los contratos estaban a nombre de Ewireless Accesories, cuya titularidad había sido retenida por los peticionarios. Dicha entidad, según hemos visto, había acordado transferir

su negocio a Ewireless Stores. Los recurridos alegadamente hicieron gestiones con los peticionarios para que éstos realizaran el traspaso de los contratos. La parte peticionaria supuestamente se comprometió a verificar lo anterior.

No obstante estas representaciones, el peticionario procedió a renegociar varios de los contratos que tenía Ewireless Accesories con los centros comerciales, en violación a su contrato con los recurridos. El peticionario supuestamente representó a los centros comerciales que él había efectuado una reorganización de sus corporaciones y otorgó algunos de los nuevos acuerdos a favor de una nueva entidad corporativa, la corporación recurrida Evolution, que fue incorporada por los peticionarios el 14 de enero de 2004.

El peticionario, además, canceló varios de los contratos de arrendamiento existentes e intervino para que los Centros desalojaran a los recurridos de puestos que él les había vendido. Según los recurridos, los contratos así terminados eran precisamente los de los puestos que más ventas realizaban: Mayagüez Mall, Plaza del Norte, Plaza del Sol, Plaza Carolina y Plaza Isabela.

En abril de 2004, los recurridos instaron la presente acción sobre *injunction*, incumplimiento de contrato y daños y perjuicios contra los peticionarios, ante el Tribunal de Primera Instancia, Sala Superior de Bayamón, donde ubicaban algunas de las tiendas objeto de la transacción entre las partes, entre ellas, la tienda de Plaza del Sol, cuyo contrato había sido terminado por los peticionarios.

En su demanda, los recurridos alegaron que la conducta de los peticionarios constituia un incumplimiento de su contrato con los recurridos y que había ocasionado severos daños a éstos. Los recurridos alegaron que el peticionario Anaudi Hernández Nieves había incurrido en conducta fraudulenta, en falsas representaciones y perjurio y que había intervenido torticeramente con los contratos de arrendamiento adquiridos por los recurridos. Los recurridos solicitaron al Tribunal que emitiera un *injunction* contra las partes peticionarias para que se les prohibiera intervenir con los contratos de arrendamiento de los negocios. También solicitaron compensación por los daños provocados.

Los socios de los recurridos solicitaron intervenir en la acción, y reclamaron remedios parecidos contra los peticionarios.

Los peticionarios contestaron la demanda, negaron las alegaciones y levantaron varias defensas afirmativas. Entre otras cosas, los peticionarios alegaron que sus actuaciones habían sido como oficiales de CDW y de Ewireless Accesories, por lo que no tenían responsabilidad personal por los hechos.

Los peticionarios también instaron una reconvención contra los recurridos. Alegaron que los recurridos habían incumplido su obligación de actuar exclusivamente como representantes de Verizon, y que habían activado celulares para otras compañías, lo que, supuestamente, había ocasionado daños a los peticionarios. También plantearon que los recurridos les adeudaban por el equipo cedido. Los peticionarios también plantearon que los recurridos habían incumplido su obligación de hacer los traspasos de los contratos de arrendamiento y que, posteriormente, habían pagado a los centros comerciales con cheques sin fondo, lo que también había ocasionado daños a los peticionarios.

Los peticionarios solicitaron compensación por estas actuaciones, que fijaron en $8,000,000.

Luego de otros incidentes, el 12 de mayo de 2004, el Tribunal de Primera Instancia celebró una vista. En esa ocasión, luego de escuchar a la prueba presentada por las partes, el Tribunal expresó que entendía que la terminación de los contratos de arrendamiento realizada por el peticionario Anaudi Hernández había sido ilegal, pero declinó emitir el *injunction* solicitado por entender que los recurridos gozaban de un remedio en daños y perjuicios contra los peticionarios.

Oportunamente, los esposos peticionarios presentaron una moción de sentencia sumaria en la que insistieron que no tenían responsabilidad personal alguna por los hechos alegados en la demanda, ya que las partes contratantes con los recurridos habían sido las corporaciones CDW y Ewireless Accesories. Los peticionarios alegaron que ellos habían actuado exclusivamente como oficiales de dichas corporaciones y que no existía base alguna para rasgar el velo corporativo.

Por su parte, Evolution también presentó una moción de sentencia sumaria en la que alegó que tampoco tenía responsabilidad alguna por los hechos, ya que había sido incorporada con posterioridad a las transacciones del 5 y 6 de marzo de 2003 y no había asumido obligación alguna frente a los recurridos.

Los recurridos solicitaron prórroga para oponerse a las mociones de los peticionarios, pero no llegaron a hacerlo. Solicitaron, en su lugar, que se les permitiera concluir su descubrimiento de prueba.

Posteriormente, los recurridos solicitaron al Tribunal que emitiera una orden de embargo en aseguramiento de sentencia contra los peticionarios. Los recurridos alegaron que los esposos peticionarios estaban disponiendo de sus bienes personales, que habían vendido su casa y otros bienes y que permanecían en su residencia en calidad de arrendatarios. Se quejaron, además, de que el recurrido Anaudi Hernández estaba resistiéndose a cooperar con el descubrimiento de prueba y a ser depuesto.

Los peticionarios se opusieron a la solicitud de los recurridos y presentaron una moción para que el Tribunal emitiera una orden de embargo a su favor. Los peticionarios alegaron que el Tribunal no debía actuar hasta haber adjudicado las mociones de sentencia sumaria presentadas por los peticionarios.

Luego de otros incidentes, incluido un recurso previo ante este Tribunal, caso núm. KLCE-04-01321, el Tribunal de Primera Instancia celebró una vista evidenciaria sobre el embargo, que tuvo lugar los días 25 de febrero y 29 de marzo de 2005.

Durante el señalamiento, los recurridos alegaron que el Tribunal ya había determinado que la conducta de los peticionarios había sido ilegal, mediante su determinación del 12 de mayo de 2004. Los peticionarios alegaron que dicho dictamen no era final. Insistieron, además, en que el Tribunal no debía adjudicar la solicitud de embargo de los recurridos, hasta tanto hubiese resuelto las mociones de sentencia sumaria presentadas por los peticionarios.

Los recurridos se opusieron a los argumentos de los peticionarios.

Escuchada la prueba, el Tribunal emitió la resolución recurrida y autorizó a los recurridos a realizar un embargo en aseguramiento de sentencia por la cantidad de $200,000 sobre los bienes de los peticionarios. El Tribunal impuso a los recurridos una fianza de $50,000.

La solicitud de embargo preventivo presentada por los peticionarios fue denegada.

Insatisfechos, los peticionarios acudieron ante este Tribunal.

## III

En su recurso, los peticionarios plantean que el Tribunal de Primera Instancia erró al emitir la orden de embargo en su contra.

La Regla 56.1 de las de Procedimiento Civil confiere autoridad a los tribunales de Primera Instancia para, en cualquier momento y a instancias de la parte reclamante, dictar "*cualquier orden provisional que sea necesaria para asegurar la efectividad de la sentencia.*" 32 L.P.R.A. Ap. III, R. 56.1.

Los remedios provisionales autorizados incluyen el embargo de bienes, la prohibición de enajenar, la sindicatura, órdenes para hacer o desistir de hacer actos específicos, así como cualquier otra medida que el tribunal estime apropiada, según las circunstancias del caso. *Id.;* véanse, *Ramos y otros v. Colón y otros*, 153 D. P.R. 534, 542 (2001); *Vargas v. González*, 149 D.P.R. 859, 865 (2000); *Pérez Mercado v. Martínez Rondón*, 130 D.P.R. 134, 142-148 (1992); *Silva Oliveras v. Durán Rodríguez*, 119 D.P.R. 254, 262 (1987); *Rocafort v. Álvarez*, 112 D.P.R. 563, 570-571 (1982); *Albaladejo v. Vilella Suau*, 106 D.P.R. 331, 335 (1977); *Cámara Comer. Mayoristas v. Trib. Superior*, 102 D.P:R. 646, 647 (1974).

Se trata, en esencia, de órdenes para auxiliar y hacer efectiva la jurisdicción del Tribunal sobre la controversia. El Tribunal de Primera Instancia goza de amplia discreción para emitir este tipo de órdenes, sujeto a que la medida adoptada sea razonable. *Vda. De Galindo v. Cano*, 108 D.P.R. 277, 282 n. 5 (1979); *F.D. Rich Co. v. Tribunal Superior*, 99 D.P.R. 158, 176 (1970).

El Tribunal Supremo de Puerto Rico ha aclarado, en este sentido, que existe un claro interés social en que se provean remedios adecuados para el cobro de deudas y reclamaciones, lo que resulta fundamental en una economía como la nuestra, con amplias bases en el crédito personal. De ahí que las disposiciones que proveen para dicho aseguramiento deben ser interpretadas "*con amplitud y liberalidad, concediéndose aquélla que mejor asegure la reclamación y menos inconvenientes cause al demandado*." *Román Fonseca v. S.L.G.*, 160 D. P.R. ___ (2003), **2003 J.T.S. 131**, a la pág. 4.

La Regla 56.2 de las de Procedimiento Civil establece que, de ordinario, no se concederá, modificará, anulará o se tomará providencia alguna sobre un remedio provisional sin notificar a la parte adversa y sin celebrar una vista, 32 L.P.R.A. Ap. III, R. 56.2; *Ramos y otros v. Colón y otros*, 153 D.P.R. a la pág. 542; *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 D.P.R. 881, 896 (1993), véase, además, *Connecticut v. Doehr*, 501 U.S. 1, 9-13 (1991). ■

La Regla 56.3, por su parte, establece que al emitir una orden sobre remedio provisional, el Tribunal fijará una fianza suficiente para responder por todos los daños y perjuicios que puedan ocasionarse como consecuencia del aseguramiento. 32 L.P.R.A. Ap. III, R. 56.3; *Pereira v. Reyes de Sims*, 126 D.P.R. 220, 226-227 (1990); *Soc. de Gananciales v. Rodríguez*, 116 D.P.R. 468, 471-472 (1985); *Blatt & Udell v. Core Cell*, 110 D.P.R. 142, 146 (1980); *Vda. de Galindo v. Cano*, 108 D.P.R. a la pág. 282; *Rodríguez v. Fidelity Bond. Mort. Corp.*, 108 D.P.R. 156, 158 (1978); *Alum Torres v. Campos del Toro*, 89 D.P.R. 305, 322 (1963).

Este requisito puede ser dispensado cuando la obligación surge de un documento público o fehaciente; se trata de un litigante insolvente o cuando se gestiona el remedio luego de emitida una sentencia final. *Ramos y otros v. Colón y otros*, 153 D.P.R. a la pág. 542; *Feliciano Figueroa v. Toste Piñero*, 134 D.P.R. 909, 912-913 (1993); *M. Quilinchini Sucrs., Inc. v. Villa Inv. Corp.*, 112 D.P.R. 322, 326 (1982); véanse, además, *Reyes v. Oriental Fed. Savs. Bank*, 133 D.P.R. 15, 20-21 (1993); *Bucaré Management v. Arriaga García*, 125 D.P.R. 153, 157-159 (1990).

En la situación de autos, según hemos visto, los recurridos solicitaron el embargo preventivo para garantizar cualquier sentencia que, en su día, pudiera ser emitida por el Tribunal contra los peticionarios. Los recurridos alegaron que contaban con la probabilidad de prevalecer en su demanda, según lo indicado por la resolución del Tribunal del 12 de mayo de 2004 y señalaron que existía base para sospechar que no podrían hacer efectiva una sentencia a su favor, ya que el peticionario estaba haciendo gestiones para disponer de sus bienes. El Tribunal de Primera Instancia aceptó estos planteamientos y emitió la orden de embargo.

Los peticionarios plantean que el Tribunal de Primera Instancia erró al conceder peso a la expresión realizada por el Tribunal en su resolución emitida en corte abierta el 12 de mayo de 2004, a los efectos de que la terminación de los contratos de arrendamiento por parte de los peticionarios había sido ilegal. Los peticionarios

alegan que dicha resolución no constituyó una sentencia parcial, por lo que el Tribunal no estaba obligado a considerarla.

Es evidente que el pronunciamiento en cuestión no constituye un dictamen final, sino una determinación meramente interlocutoria. *Ramos y otros v. Colón y otros*, 153 D.P.R. a la pág. 545; *De Jesús Maldonado v. Corporación Azucarera*, 145 D.P.R. 899, 903-904 (1998); *Díaz v. Navieras de P.R.*, 118 D.P.R. 297, 301-302 (1987). Pero ello es impertinente.

Lo cierto es que el pronunciamiento anterior del Tribunal apoya la contención de los recurridos de que gozan de una expectativa de prevalecer en su reclamación contra los peticionarios. No vemos motivo por el cual el Tribunal de Primera Instancia no hubiera podido tomar en consideración la expresión anterior del Tribunal, la cual, además, nos parece razonablemente respaldada por los documentos presentados por las partes.

Los peticionarios plantean que el Tribunal de Primera Instancia erró al conceder la orden de embargo, sin adjudicar sus mociones de sentencia sumaria. Los peticionarios insisten, en este sentido, en que ellos actuaron como oficiales de CDW y Ewireless Accesories, y que por lo tanto, no responden, en su carácter personal, por las obligaciones de dichas corporaciones.

El principio, según se conoce, es que la corporaciones gozan de una personalidad jurídica separada y distinta a la de sus accionistas. El Tribunal Supremo de Puerto Rico ha aclarado que, para que pueda rasgarse el velo corporativo, de ordinario, debe establecerse que la corporación ha funcionado como un mero "*alter ego*" de sus accionistas con el propósito de encubrir alguna actuación inicua o ilegal. *D.A.C.O. v. Alturas Fl. Dev. Corp. y otro*, 132 D.P.R. 905, 925 (1993); *Fleming v. Toa Alta Develop. Corp.*, 96 D.P.R. 240, 244 (1968); *San Miguel Fertil. Corp. v. P.R. Drydock*, 94 D.P.R. 424, 430 (1967); *Sucn. Pérez v. Gual*, 76 D.P.R. 959, 963 (1954).

El peso de la prueba para lo anterior recae sobre la parte que interesa rasgar el velo corporativo. *D.A.C.O. v. Alturas Fl. Dev. Corp. y otro*, 132 D.P.R. a la pág. 926; *J.E. Candal & Co. v. Rivera*, 86 D.P.R. 508, 513 (1962); *Cruz v. Ramírez*, 75 D.P.R. 947, 954 (1954).

La prueba debe ser fuerte y robusta. *Ab Intestato Balzac Vélez*, 109 D.P.R. 670, 681 (1980); *González v. San Just Corp.*, 101 D.P.R. 168, 172 (1973); *San Miguel Fertil. Corp. v. P.R. Drydock*, 94 D.P.R. a la pág. 430.

En el presente caso, los recurridos plantean que los esposos peticionarios deben responder por el incumplimiento de las obligaciones contraídas por sus corporaciones, ya que éstas funcionaban como un mero *alterego* de los peticionarios.

Existe una evidente controversia real sustancial entre las partes sobre este punto, lo que no permite que el asunto sea adjudicado sumariamente, según pretenden los peticionarios. *Vera et al. v. Dr. Bravo et als.*, 161 D. P.R. ___ (2004), **2004 J.T.S. 40**, a la pág. 744; *P.A.C. v. E.L.A. I*, 150 D.P.R. 359, 374 (2000); *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. 714, 720 (1986).

Debe notarse que mientras el embargo de bienes persigue asegurar una sentencia que en su día pueda recaer a favor de un demandante, una moción de sentencia sumaria tiene más bien el propósito de permitir al demandado auscultar las alegaciones y obtener la desestimación de un litigio, cuando no existe controversia real esencial en torno a los hechos y sólo corresponde que el Tribunal adjudique el derecho. De ahí que, al evaluar una moción de sentencia sumaria, el Tribunal debe considerar la totalidad de las alegaciones y documentos que obren en el récord, los cuales se toman de la manera más favorable a la parte promovida. *Mgmt. Adm. Servs. Corp. v. E.L.A.*, 152 D.P.R. 599, 610-611 (2000); *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 D.P.R. 881, 913 (1994).

El peso para demostrar que no existe controversia real sustancial sobre los hechos materiales siempre recae sobre la parte promovente de la sentencia sumaria. *Vera et al. v. Dr. Bravo et als.*, **2004 J.T.S. 40**, a la pág. 745; *Soto v. Rivera*, 144 D.P.R. 500, 518 (1997); *Pilot Life Ins. Co. v. Crespo Martínez*, 136 D.P.R. 624, 632 (1994). El sólo hecho de no presentar evidencia en contrario no justifica que se declare con lugar la moción. *Jusino et als. v. Walgreens*, 155 D.P.R. ___ (2001), **2001 J.T.S. 154**, a la pág. 373.

Tiene que haber quedado demostrado que la parte promovida no tiene derecho alguno bajo cualquier circunstancia discernible de las alegaciones que no hayan sido refutadas. *Asoc. Pesc. Pta. Figueras v. Pto. del Rey*, 155 D.P.R. ___ (2002), **2002 J.T.S. 4**, a la pág. 583; *García Rivera et al. v. Enríquez*, 153 D.P.R. 323, 338 (2001).

Debe recordarse que el procedimiento de sentencia sumaria no permite que el Tribunal dirima cuestiones de credibilidad. *Vera et al. v. Dr. Bravo et als.*, **2004 J.T.S. 40**, a la pág. 745.

Tampoco debe desestimarse sumariamente una demanda sin brindar a la parte demandante una oportunidad adecuada de concluir su descubrimiento y de refutar la moción de sentencia sumaria. *García Rivera et al. v. Enríquez*, 153 D.P.R. a las págs. 339-340; *Pérez v. El Vocero de P.R.*, 149 D.P.R. 427, 447 (1999); *Medina v. M.S. & D. Química P.R., Inc.*, 135 D.P.R. 716, 733 (1994).

En el presente caso, las alegaciones de los recurridos no parecen, de su faz, implausibles, en vista de la manera en que fueron estructurados los negocios. Los recurridos han solicitado precisamente que se les permita concluir su descubrimiento de prueba contra los peticionarios, para establecer su reclamación.

Las alegaciones de los recurridos, por otro lado, razonablemente exponen una reclamación por interferencia torticera contra los peticionarios. Véase, *Jusino et als. v. Walgreens*, **2001 J.T.S. 154**, a las págs. 372-373; *Dolphin Int'l of P.R. v. Ryder Truck Lines*, 127 D.P.R. 869, 879-880 (1991); *Gen. Office Prods. v. A.M. Capens Sons*, 115 D.P.R. 553, 558 (1984).

Este tipo de reclamación, según se conoce, es de naturaleza extracontractual, por lo que no depende de los contratos otorgados entre Ewireless Stores y las corporaciones de los peticionarios, CDW y Ewireless Accesories, sino de las actuaciones específicas llevadas a cabo por los peticionarios.

Los recurridos han alegado, en este sentido, que el peticionario Anaudi Hernández actuó ilícitamente, al promover que varios de los centros comerciales terminaran sus contratos de arrendamiento con los recurridos, y que Evolution, similarmente actuó de forma torticera, al interferir con dichos contratos, a sabiendas de que los mismos habían sido adquiridos por los recurridos.

No endentemos que dichas alegaciones puedan ser desestimadas de manera sumaria.

Los peticionarios plantean que el Tribunal de Primera Instancia erró al ordenar el embargo en la suma de $200,000. No estimamos que lo anterior afecte la validez de la orden emitida por el Tribunal. Véase, *Fresh-O-Baking Co. v. Molinos de P.R.*, 103 D.P.R. 509, 520 (1975); *Ramery Vélez v. Banco Popular*, 90 D.P.R. 274, 280 (1964).

El foro de Primera Instancia evidentemente goza de discreción en este tipo de determinaciones.

En el presente caso, los recurridos señalan que ellos adquirieron 15 locales por la suma de $750,000 (i.e., $50,000 por local) y que, posteriormente, debido a la intervención de los peticionarios, perdieron por lo menos cuatro de ellos, lo que justificaba el embargo en la suma ordenada por el Tribunal.

Los peticionarios no nos han colocado en posición de sustituir la apreciación del Tribunal de Primera Instancia sobre este particular. Toda vez que no surge que el Tribunal de Primera Instancia hubiera actuado de manera arbitraria, declinamos intervenir con su determinación.

Por los fundamentos expresados, se deniega el auto solicitado.

Lo pronunció el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones